UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| _____ | § | |
| CAROLYN D. SPEARS | § | |
| | § | CIVIL ACTION NO. 1:18-CV-00387 |
| Plaintiff, | § | |
| | § | |
| VERSUS | § | JUDGE TERRY A. DOUGHTY |
| | § | |
| LOUISIANA COLLEGE, | § | |
| | § | MAGISTRATE JUDGE MARK HORNSBY |
| Defendant. | § | |
| | § | JURY TRIAL REQUESTED |
| _____ | § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Of Counsel:

Billy R. Pesnell
Louisiana Bar Roll No. 10533
J. Whitney Pesnell
Louisiana Bar Roll No. 15035
The Pesnell Law Firm, A P.L.C.
H.C. Beck Building, Suite 1100
400 Travis Street
Shreveport, Louisiana  71101
Post Office Box 1794
Shreveport, Louisiana 71166-1794
Telephone:  (318) 226-5577
Telecopy:  (318) 226-5578

--     Attorneys For Plaintiff, Joe W. Aguillard.

Us/opposition to MSJ clery memo 5 22 19

# **TABLE OF CONTENTS**

Page

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-12

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-33

I.      Defendant's Motion for Summary Judgment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-25

      1.      Louisiana College's Motion for Summary Judgment Should be Denied.
There are genuine issues of material fact and Louisiana College is not
entitled to judgment as a matter of law . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-23

      2.      Louisiana College is not entitled to summary judgment on
Plaintiff's Defamation Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-25

II..     Plaintiff's Cross Motion for Partial Summary Judgment.. . . . . . . . . . . . . . . . . . . . . . 25-33

      A.      Plaintiff's claim for Discrimination under the ADEA  . . . . . . . . . . . . . . . . . . 25-27

      B.      Plaintiff's Claims for Retaliation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-29

      C.      Plaintiff's Claim for Breach of Contract Claim  . . . . . . . . . . . . . . . . . . . . . 29-33

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

ATTACHMENTS:

(a)      the Affidavit of Dr. Carolyn D. Spears;

(b)      the Affidavit of Dr. Joe W. Aguillard;

(c)      the Affidavit of Carolyn Denise Spears Smith;

(d)      an excerpt from the deposition of Dr. Carolyn D. Spears taken on September 4, 2019;

(e)      an excerpt from the deposition of Joe W. Aguillard taken on September 5, 2019;

(f)     an excerpt from the deposition of Dr. Kimberly Sharp taken March 13, 2020;

(g)     an excerpt from the deposition of Dr. Richard B. Brewer taken Setember 3, 2019;

(h)     an excerpt from the deposition of Dr. Cheryl D. Clark taken September 3, 2019;

(i)     an excerpt from the deposition of Shannon Tassin taken September 4, 2019;

(j)     an excerpt from the deposition of Camacia Smith-Ross taken on October 17, 2019;

(k)     an excerpt from the deposition of Kim Guillory taken on September 5, 2019; and

(l)     an excerpt from the deposition of Kathy Overturf taken on May 21, 2020

(m)     Plaintiff's responses to Defendant's Statement of Undisputed Material Facts; and

(n)     Plaintiff's Statement of the Undisputed Facts in support of her Motion for Partial Summary Judgment

## INDEX OF AUTHORITIES

Pages

<u>Cases</u>

Alvarado v. Texas Rangers, <u>492 F.3d 605, 611</u> (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Berquist v. Washington Mut. Bank, <u>500 F.3d 344,348-49</u> (5th Cir. 2007) . . . . . . . . . . . . . . .  25

Bruneau v. Crescent City Cleaning Services Corporation, <u>209 So.3d 286</u>
(La. App. 5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Carlson v. ESX Transp., Inc., <u>758 F.3d 819, 829</u> (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 22

Costello v. Hardy, <u>864 So.2d 129, 139</u> (La. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Desert Palance, Inc. v. Costa, <u>539 U.S. 90, 92-93</u>, <u>123 S.Ct. 2148</u> (2003) . . . . . . . . . . . . . . . . 21

Dixon v. Gonzales, <u>481 F.3d 324</u> (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Evans v. City of Houston, <u>246 F.3d 344</u> (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Evans v. Texas Department of Transportation, <u>547 F.Supp.2d 626</u>
(E.D. Texas 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

Guillory v. Broussard, <u>194 So.3d 764</u> (La. App. 3rd Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 30

Hays Fund For the First United Methodist Church of Welsh, L.L.C. v.
Kerr-McGee Rocky Mountain, L.L.C.,<u>193 So.3d 110</u> (La. 2015) . . . . . . . . . . . . . . . . . . . . . . 30

Jenkins v. City of San Antonio, <u>784 F.3d 263, 269</u> (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . 27

Jones v. Southern University and A&M College System,
<u>693 So.2d 1265, 1269</u> (La. App. 1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Jones v. U.P.S., Inc.,<u>502 F.3d 1176, 1194</u> (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kachmar v. Sungard Data Syustems, Inc., <u>109 F.3d 173, 177</u> (3rd Cir. 1997) . . . . . . . . . . . . . 22

Leibowitz v. Cornell University, <u>584 F.3d 487, 501</u> (2nd Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 12

Lettieri v. Equant, Inc., <u>478 F.3d 640, 650</u> (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Marra v. Philadelphia Housing, 497 F.3d 286, 302 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 22

McAdams v. Marquette University, 383 Wisc 2d 358, 914 N.W. 2nd 708 (2018) . . . . . . . . . . 14

McDonnell Douglas v. Green, 411 U.S. 792, 794-96, 93 S.Ct. 1817 (1973) . . . . . . . . . . . 13, 21

Munker v. Board of Supervisors, 255 So.3d 718 (La. App. 2nd Cir. 2018) . . . . . . . . . . . . . . . . 32

Nat'l R. R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2001 (2002) . . . . . . . . . 13

Okuarume v. Southern University, 245 So.3d 1260 (La. App. 4th Cir. 2018) . . . . . . . . . . . . . . 15

Olivier v. Xavier University, 553 So.2d 1004 (4th Cir. 1990),
writ denied 556 So.2d 1279 (La. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

Porter v. California Dept. Of Corr., 419 F.3d 885, 895 (9th Cir.2005) . . . . . . . . . . . . . . . . . . 22

Reardon v. Herring, 201 F.Supp. 3rd 782 (E.D. Va. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000) . . . . . . . . . 25

Richmond v. Oklahoma Univ. Bd. Of Regents, 162 F.3d 1174 (10th Cir. 1998) . . . . . . . . . . . 22

Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000) . . . . . . . . . . . . . . . . 21

Schalow v. Loyola University of New Orleans, 646 So.2d 502
(La. App. 4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Shirley v. Chrysler First, Inc., 970 F.2d 59 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Simmons v. Camden County Bd. of Education, 757 F.2d 1187
(11th Cir. 1985), cert. denied, 474 U.S. 981, 106 S.Ct. 385 (1985) . . . . . . . . . . . . . . . . . . . . 22

 Smith v. Bd. Of Supervisors for the Univ. Of La. Sys.,
2015 WL 10663156 (E.D. La. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Stratton v. Department for the Aging for the City of N.Y.,
132 F.3d 869 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Swetman v. Gerace, 349 So.2d 977 (La. App. 1st Cir. 1977),
writ ref. 354 So.2d 171 (La. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Tabatchnik v. Continental Airlines, 262 Fed. Appx. 674 (5th Cir. 2008) . . . . . . . . . . . . . . . . . 19

Thorne v. Monroe City School Board, 542 So.2d 490 (La. 1989)  . . . . . . . . . . . . . . . . . . . . . . 14

Tureaud v. Grambling State University, 294 F.App'x 909, 914 (5th Cir. 2008)  . . . . . . . . . . . 29

University of Texas Southwestern Medical Center v. Nassar,
570 U.S. 338, 133 S.Ct. 2517 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Waltman v. International Paper, 875 F.2d 468, 475-76 (5th Cir. 1983)  . . . . . . . . . . . . . . . . . . 6

Ward v. United Parcel Service, 580 Fed. Appx. 735 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . 22

West v. Nabors Drilling USA, Inc., 336 F.3d 379, 384, n. 3 (5th Cir. 2003) . . . . . . . . . . . . . . 21

Wilson v. Monarch Paper Company, 939 F.2d 1138, 1146 (5th Cir. 1991)  . . . . . . . . . . . . . . . . 6

Wright v. Compusa, Inc., 352 F.3d 472, 478 (1st Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Statutes/Miscellaneous Citations

42 U.S.C. § 2000e-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

_____

CAROLYN D. SPEARS                       §
                                        §
                                        §   CIVIL ACTION NO. 1:18-CV-00387
                    Plaintiff,          §
                                        §
VERSUS                                  §   JUDGE TERRY A. DOUGHTY
                                        §
LOUISIANA COLLEGE,                      §
                                        §   MAGISTRATE JUDGE MARK HORNSBY
                    Defendant.          §
                                        §   JURY TRIAL REQUESTED
                                        §
_____ §


**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT**


MAY IT PLEASE THE COURT:

### Statement of the Case

This case is now before the Court on Defendant's Motion for Summary Judgment and

Plaintiff's Cross-Motion for Partial Summary Judgment.  Louisiana College's Motion for

Summary Judgment is so lacking in candor to the Court and its suppression of the relevant facts

that Plaintiff is obliged to completely re-state the case.

Plaintiff was terminated from her employment as a tenured professor by Louisiana

College by letter from Dr. Richard B. Brewer, President,[1] dated February 20, 2017, effective July 31, 2017.  Although this letter is dated February 20, 2017, it was **not** received by Dr. Spears until April 20, 2017.  See Spears Aff., ¶3, Ex. A.  The only reason assigned by Dr. Brewer for her termination was that Louisiana College "had decided to go in a different direction."  At the time of her termination, Plaintiff was employed by Louisiana College under a written contract of employment for a term of one (1) year beginning August 15, 2016, and ending May 6, 2017.  Spears Aff., ¶4.  She was employed as a Senior Professor teaching "twelve hours per semester" in the fall and spring as required for all full-time faculty at Louisiana College.  See Spears Aff., Ex. B.  The Contract also provided that it was "subject to non-renewal," that it was "limited to the period of time specified on the contract" and further that "the issuance of this Contract offers no expectation of any future contracts."  See Spears Aff., ¶4, Ex. B.  Louisiana College fails to tell the Court in this connection that these provisions are typically and customarily included in **all** faculty employment contracts issued by Louisiana College.  See Aguillard Aff., ¶2.

However, the Contract also expressly incorporated by reference provisions of the Faculty Handbook, including the "tenure" provisions.  Louisiana College conspicuously ignores the "incorporation by reference" provisions throughout its Memorandum.  Importantly, the Faculty Handbook provides in this connection that:

"*   *   *

"2.5.1. Definition of Tenure.

"Tenure is the reasonable expectation of continued employment by the College on an annual contractual basis as long as, and only as long as, the faculty member abides by

---

[1] Dr. Brewer was employed by Louisiana College as its President in March of 2015.  He began his employment as President on April 7, 2015.

all employment policies. ***Tenured faculty members can be terminated only for adequate cause as defined in Section 2.11.4,*** except in extraordinary circumstances because of financial exigencies as defined in 2.11.3.3." (Emphasis added.) [2]

Although not expressly mentioned in her employment contract, Plaintiff was at all times relevant hereto a fully tenured member of Louisiana College's faculty and had been since 1984. Plaintiff was originally employed as a full-time member of Louisiana College's faculty on August 1, 1977. Spears Aff., ¶2.

On or about February 28, 2007, Plaintiff accepted a "Retirement Plan Option" which allowed her to elect to retire by ***July 31, 2007***, and receive the benefits then available to current retirees, including a medicare supplement and a prescription drug plan. This option allowed Plaintiff to freeze and retain the additional retirement benefits. Notwithstanding her "retirement" effective July 31, 2007, Dr. Spears continued to serve on the faculty of Louisiana College by executing one-year-term contracts until she was terminated by Dr. Brewer effective July 31, 2017.

However, Plaintiff was diagnosed with adenocarcenoma in the fall of 2012. She was treated with a complete hysterectomy, followed by radiation. The cancer re-occurred and Plaintiff was diagnosed with Stage 4 cancer in 2014. Treatment (including both invasive and non-invasive procedures) immediately began and continued until June of 2016.

During this period of time, Louisiana College "accommodated" Plaintiff's disability when she was required to be out of town for treatment at M.D. Anderson in Houston, Texas, and on other occasions. Plaintiff's employment contract did not include mandatory summer work.

---

[2] There are other significant and important provisions contained in the Faculty Handbook which will be called to the attention of the Court later.

Plaintiff was able to work around her schedule with the assistance of Dean Smith-Ross, her supervisor.  Plaintiff was able to get her faculty colleagues to take her classes when she was unavailable for medical reasons.  See Spears Dep., pp. 37-39.  As a result, Louisiana College was out **no additional expense** because of Plaintiff's medical problems.  The physical and mental stress of the cancer and its treatment devastated Dr. Spears.  Accordingly, she applied for "sick leave" as provided by the Faculty Handbook (Spears Aff., ¶9, Ex. J).  She was granted "sick leave" on or about August 15, 2016, and remained on "sick leave" until May of 2017.  See Spears Aff., ¶9, Exs. K, L [Dr.'s report].

Shannon Tassin, head of Human Resources Department at Louisiana College, testified that she (Spears) was "not returning" when she was "applying for long term disability."  See Tassin Dep., pp. 101, 102, 105.  Cheryl Clark testified that she had "heard" that Dr. Spears was "not going to be able to return to teach."  Clark Dep., p. 37.  Dr. Clark denied that Dr. Spears told her personally that she was not coming back.  Clark Dep., p. 36-37.  Relying on this statement, Louisiana College attempts to show that Dr. Spears was not "fired" but rather "retired."  So much for Dr. Brewer's letter **terminating** her.[3]  Dr. Spears categorically denied making any such statements to Ms. Tassin or anyone else.  Spears Dep., pp. 42-43.  Louisiana College now relies upon Tassin's testimony to support its contention that Dr. Spears was "retired" and, ergo, had no "tenure."  Tassin Dep., p. 101.  The circumstantial evidence clearly supports Dr. Spears' position.

---

[3] In an attempt to fabricate support for this purported defense, Louisiana College invited Dr. Spears to a dinner honoring its "retiring" faculty members in 2017 (Dr. Spears did not attend) [Spears Aff., ¶21] and by sending her a rocking chair (which Dr. Spears sent back and did not accept) [Spears Aff., ¶21].  Obviously, Louisiana College was not **aware** of this "defense" when Dr. Brewer posted his "Official Response" to Ms. McIntosh's letter on Facebook on May 18, 2017.  See *infra* at p. 16.

The "sick leave" documents prepared by Ms. Tassin herself clearly show that Dr. Spears and her attending physician (Dr. Westin) did not know how long her medical condition would last.  The documents clearly showed on their face that Dr. Spears had not been terminated and was a full-time employee.  Spears Aff., ¶9, Ex. K.  Moreover, it is clear from Dr. Spears' email to Ms. Tassin dated March 16, 2017, that she intended to return to her teaching position.  See Spears Aff., ¶14, Ex. T.  Incredibly, Louisiana College nowhere mentions or advises the Court of this disputed question of material fact in its 34 page Memorandum.

While Plaintiff's medical problems were subsiding, her employment problems with the Brewer administration were just beginning.  On or about April 22,2015, Dr. Cheryl D. Clark, Vice President of Academics, openly attacked Plaintiff at a meeting of the Academic Council, calling the courses taught by Plaintiff for years a "joke."  Although Plaintiff was not at the meeting, Dr. Carmacia Smith-Ross, Plaintiff's immediate supervisor, and Dr. Kimberly Sharp, Dean of the School of Nursing, were both present at the meeting and personally heard the comments.[4]  They both immediately reported the incident to Dr. Spears. Dr. Clark's comments spread throughout Louisiana College like wildfire.  Quite apart from her public attack on Dr. Spears, Dr. Clark was privately attacking Dr. Spears with the faculty, notably with Dr. Smith-Ross (Smith-Ross Dep., pp. 30-31) and Dr. Sharp (Sharp Dep., pp. 29-31).

Even before her public attack on April 22, 2015, Dr. Clark had been "harassing" Dr. Spears.  Aguillard Aff., ¶6, Ex. D [email 3/2015 to French).  The April 22, 2015, incident marked the beginning of a "hostile work environment" and period of antagonism for Dr. Spears at

---

[4] Dr. Clark had not previously mentioned or discussed any criticism or problem with Dr. Spears' performance of her teaching responsibilities with Dr. Spears or her supervisor, Dr. Smith-Ross.

Louisiana College.  Spears Aff., ¶¶10-14; Sharp Dep., p. 31.  Louisiana College, knowing that it

had **no** cause for terminating her employment contract, deliberately adopted a strategy calculated

to force Dr. Spears to resign.  See <u>Wilson v. Monarch Paper Company</u>, <u>939 F.2d 1138, 1146</u> (5th

Cir. 1991), where the Court found:

> "... The evidence, considered as a whole, will fully support the view, which the
> jury apparently held, that Monarch, unwilling to fire Wilson outright, intentionally
> and systematically set out to humiliate him in the hopes that he would quit. ..."

The Court further noted that (fn. 5):

> "... There is some suggestion in the record, however, that Monarch was unwilling
> to fire Wilson outright because ***it had no grounds and perhaps feared a lawsuit.
> Although Monarch was willing to accept Wilson's resignation, Wilson was
> unwilling to resign***. Once he was unwilling to resign, the evidence supports the
> inference that Monarch's efforts intensified to force his resignation. ..." (Emphasis
> added.)

Plaintiff knew that her job was at risk.  Spears Dep., p. 52.  She was isolated.  Dr. Clark

repeatedly refused to timely respond to her routine requests. A "reasonable" person, especially

with Dr. Spears' vulnerabilities, which were clearly known to LC (and to Drs. Brewer and Clark)

would undoubtedly have felt that the environment was "hostile" throughout the period forming

the basis of Plaintiff's claims.  See <u>Waltman v. International Paper</u>, <u>875 F.2d 468, 475-76</u> (5th

Cir. 1983).  Louisiana College's acts were a "continuing" violation.  *Id*.  While some of these

incidents occurred more than 180 days before Plaintiff filed her EEOC complaint, there are

clearly other incidents which occurred within the 180 day period.  As a result of the fear of the

loss of her job, as well as the personal embarrassment, degradation, humiliation and emotional

distress suffered by her,[5] Dr. Spears consulted Dr. Michael P. Shamblin Associate Vice-

---

[5]  The Court will keep in mind that Dr. Spears was awarded the prestigious Claude Kent
Kilpatrick Professorship in Health and Education and the Distinguished Alumni Award in 2007.

President, Dr. Carmacia Smith-Ross, her supervisor, and Dr. Joe W. Aguillard, who at the time was "President Emeritus" and a fully tenured member of the faculty, at Louisiana College to assist her in preparing and filing a "whistleblower" complaint and an EEOC complaint.  See Spears Aff., ¶11; Aguillard Aff., ¶7, Ex. E.

Dr. Aguillard had the "lead" in drafting the "whisleblower" and the EEOC complaints and the EEOC charges for Dr. Spears.  He had a draft of the "whistleblower" complaint on his computer when it was seized by Donald B. Connor on September 28, 2015, which was subsequently "hacked" and converted by Louisiana College.  Louisiana College obtained a copy of the confidential draft "whistleblower" and EEOC complaints which it offered into evidence at the FAAC hearing *against* Dr. Aguillard.  See Aguillard Aff., Ex. "E."  The "whistleblower" and EEOC complaints drafted on behalf of Dr. Spears incredibly became a key piece of evidence at Aguillard's hearing before the FAAC on February 23, 2016.  Spears Aff., ¶11; Aguillard Aff., ¶8.  Despite the fact that it was a "protected activity" of Dr. Aguillard and Dr. Spears, Louisiana College used the evidence *against him*.  Although Dr. Spears was not present at the hearing, Louisiana College attacked Dr. Spears at the hearing, as if the hearing were directed at her.  Dr. Aguillard was terminated effective March 31, 2016.

In May of 2016 (the best of Dr. Spears recollection), she was called to a meeting by Dr. Cheryl D. Clark, at her office, immediately following a chemotherapy treatment [Guillory Dep., p. 10; Spears Aff., ¶12; Clark Dep., p. 51] and advised that the Department of Health and Physical Education was being re-organized and re-structured by moving the Health and Physical Education Department out of the School of Education and putting it under the Department of

_____

She was also inducted into the Louisiana College Sports Hall of Fame in 2008.

Nursing/Allied Healthcare.   Although Plaintiff had been the Chair of the Health and Physical Education Department, she had **no notice** of the proposed change and **no input** into the decision.[6]

In addition, Dr. Clark demoted Plaintiff at their meeting in May, 2016.  Clark Dep., p. 26. She stripped Plaintiff of her duties and responsibilities as Division Chair and Department Coordinator.  *Id*. She cut Plaintiff's salary by approximately Five Hundred And No/100 Dollars ($500.00) per month.  Spears Aff., ¶¶4, 12, Ex. B; Clark Dep., p. 29.  Dr. Clark also unilaterally changed Plaintiff's teaching schedule for the fall of 2016 academic year and rejected Plaintiff's request for medical accommodation in connection with her teaching schedule.  Spears Aff., ¶12. It was apparent that Louisiana College was attempting to force Plaintiff to resign.

Dr. Micheal E. Brunet, a male employee of Louisiana College who had previously worked under Plaintiff and who was then approximately forty-five (45) years old, was promoted

---

[6]  Section 2.11.3.3 of the Faculty Handbook provides, in relevant part, that:

"Decisions regarding necessary academic program or faculty reductions will be made by the President upon the advice and counsel of the Vice President for Academic Affairs *following their receipt of the advice and counsel of consultants from the faculty and representatives of the faculty in those departments to be affected.*

"When faculty reductions are considered, *tenure rights will be protected insofar as possible. A tenured faculty member will not be terminated in favor of a non-tenured faculty member except in extraordinary circumstances where a serious distortion of the academic programs would otherwise result*. If it is necessary to terminate tenured faculty members, due consideration will be given to the essential needs of each department and the educational goals of the College.

"In any case where financial exigency or program reorientation leads to elimination of one or more tenured positions, the administration will make every reasonable effort to accomplish a reassignment of the individuals affected to other appropriate and mutually acceptable professional work at the College." (Emphasis added.)

to fill the administrative positions previously held by Plaintiff.[7]  Plaintiff was far better qualified

for these positions than Dr. Brunet.

Plaintiff applied for "sick leave" in August of 2016as provided for in the Louisiana

College Faculty Handbook.  Section 2.9.3 (Sick Leave and Disability Income) provides:

2.9.3 Sick Leave and Disability Income

* * *

That Louisiana College, in case of the inability of a faculty member to fulfill normal
responsibilities because of accident or sickness, will pay whatever portion of the salary is
necessary, in addition to other benefits such as Social Security, to bring this income up to
an amount equal to full salary of the disabled person for a period of thirty days minimum
to eight months maximum, with limitations as follows:

1.      A faculty member with ***twelve years of service to the institution would be
        continued for the remainder of the contract year, or for eight months,
        whichever is greater***.

* * *

3.      The College will pay the substitute for service while a faculty member on salary is
        disabled.

4.      No faculty member shall be eligible for the above described compensation if
        surgery or hospitalization could be scheduled during that person's vacation or
        normal leave time.

Plaintiff had far more than twelve (12) years of service to Louisiana College as a full professor at

the time of her application.  Plaintiff was eligible for benefits for eight months under the Sick

Leave Plan.  As a result of the physical and mental stress resulting from the recurrence and

treatment of her cancer, Plaintiff needed a "break," which was recommended by Dr. Shannon

---

[7]  Louisiana College did not advise Plaintiff that it was looking to replace her at these
positions.  These positions were initially offered by Louisiana College to Dr. Hans Leis, a
younger male member of the faculty.  However, Dr. Leis notified Plaintiff that he had been
offered her job, but he declined to accept it.

Westin, one of her attending physicians.  See Spears Aff., ¶9, Ex. K; Spears Dep., p. 19.  Plaintiff

was on "sick leave" from August 15, 2016, until May of 2017.

After she was terminated by Dr. Brewer, Plaintiff was replaced in her faculty position by

Jason Tinsley and Sonya Tinsley.[8]  Again, Plaintiff was far better qualified for all of her positions

and duties than the Tinsleys.  In addition to her forty (40) years of full time service to Louisiana

College, Plaintiff held a Doctor of Education in Health and Physical Education Administration

from Louisiana State University, Baton Rouge, Louisiana, conferred in 1969; a Master of Science

in Health and Physical Education Administration degree from Northwestern State University,

Natchitoches, Louisiana, conferred in 1965; and a  Bachelor of Science in Physical Education

degree from Louisiana College, Pineville, Louisiana, conferred in 1962.  By way of comparison,

Jason Tinsley holds only a Bachelor's Degree in Health and Physical Education and an

inapplicable Master's Degree in Sports Administration.  This is a totally irrelevant degree

without even 18 hours of specific graduate courses as required by SACSCOC to teach these

courses.  Mr. Tinsley was hired to teach the exact same courses that Dr. Spears had taught.

Aguillard Aff., ¶13.

Aside from the gross disparity in education and experience, the Tinsleys were both much

younger than Plaintiff.  In addition, Louisiana College agreed to pay the Tinsleys a combined

salary of more than $152,374.00.  That was some $88,951 *more* than Plaintiff was making at the

time she was terminated ($63,423.00)!  So much for Dr. Brewer's explanation that Dr. Spears

---

[8]  Significantly, Jason Tinsley's application for employment is dated February 20, 2017 –
the very same date as the letter notifying Dr. Spears that she was being dismissed, although Dr.
Spears did *not* have knowledge of her dismissal until she received Brewer's letter on April 20,
2017.  See Spears Aff., ¶3.

was terminated for financial reasons.[9]

Plaintiff filed a complaint with the EEOC and the Louisiana Commission on Human Rights on or about January 25, 2017, alleging that Louisiana College had discriminated against her because of her gender and religious beliefs and Defendant's unlawful retaliation and Defendant's discrimination against Plaintiff because of her age and her disability.   Spears Aff., ¶13, Ex. M.  Plaintiff supplemented her EEOC charge by letter dated March 6, 2017 (Spears Aff., ¶13, Ex. N), and again by letter dated June 4, 2017 (Spears Aff., ¶13, Ex. R) to claim that Louisiana College had retaliated against her by terminating her employment and by publishing confidential information and false and defamatory allegations about her.  Louisiana College was served by the EEOC with Plaintiffs' Complaints on March 9, 2017.  See Spears Aff., ¶13, Ex. O.

Although Defendant's letter terminating Plaintiff's employment did  not state a reason or ground for her termination, except to say generally that Louisiana College "was going in a different direction," Dr. Richard B. Brewer subsequently attempted to explain in a letter entitled "*Official Response From Dr. Rick Brewer*," dated May 18, 2017, and written in response to a letter from Plaintiff's sister, Charlotte Dossman McIntosh, which Defendant posted on its website on Facebook.  Overturf Dep. (Excerpts attached.) Among other things, Dr. Brewer stated for the whole world to see and read that:

> "As you know, ***Dr. Spears retired from the full time faculty at LC in 2007***, and since that time has served as a contract ***adjunct*** senior professor, which under LC policy is a year-to-year engagement on an as-needed basis."  (Emphasis added.)

And further:

---

[9]  A termination of a tenured faculty member for "financial exigencies" requires the consent and approval of the Board of Trustees.  LC Faculty Handbook for Tenure, §2.5.

"We were all saddened by Dr. Spears' illness in 2015 and prayed for her recovery.  Our sympathy and commitment to her extended to the point of *continuing to pay her full salary for two years without her ever teaching a single student, although the College was not obligated to do so.*  As you can understand, LC cannot sustain such a practice, which has never been afforded any other faculty member."  (Emphasis added.)

## ARGUMENT

1.  **Louisiana College's Motion for Summary Judgment Should Be Denied.  There are genuine issues of material fact and Louisiana College is not entitled to judgment as a matter of law.**

Louisiana College's Memorandum in support of its motion for summary judgment is

riddled with errors and mistakes with respect to both the material facts and the applicable law.

Louisiana College asserts (Memo., p. 4) that Dr. Spears "retired as a tenured professor [on July

31, 2007] and thereafter served in the role of "Senior Professor, *an adjunct, non-tenured*

*professor*" (Exhibit "E"[LC Exhibit]).  It further asserts (*id*.):

("As a Senior Professor, Ms. Spears was not tenured but instead served as an at-will employee whose year to year contracts were subject to non-renewal by the College; indeed, the annual contracts executed by Ms. Spears expressly advised that '*this contract offers no expectation of any future contracts*.") (Emphasis in the original).

These arguments are clearly erroneous.  They fly in the face of the provisions of the Faculty

Handbook which were expressly incorporated by reference in Dr. Spears' written employment

contract, another principal legal issue simply ignored by Louisiana College.

At the outset, these arguments by Louisiana College imply that the failure to renew Dr.

Spears' employment contract was completely discretionary with Louisiana College and,

consequently, that non-renewal of the employment contract is not an "adverse" employment

decision.  There is no merit to that argument.  As the Second Circuit found in Leibowitz v.

Cornell University, 584 F.3d 487, 501 (2nd Cir. 2009):

"There is simply ***no reason that the discrimination laws should not apply with equal force to an employer's decision regarding a current employee who is denied a renewal of an employment contract. An employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII and the ADEA***. The mere fact that the employer's decision not to renew is completely discretionary does not mean that it is not an 'adverse' employment decision."  (Emphasis added.)

The Court in <u>Leibowitz</u> concluded (*id*.):

"***Accordingly, we hold that where an employee seeks renewal of an employment contract, non-renewal of an employment contract constitutes an adverse employment action for purposes of Title VII and the ADEA***. Although the parties focus on the terminology used with respect to the plaintiff, whether plaintiff was 'laid off' or 'terminated,' or her employment was 'not renewed' is not critical to the legal analysis; rather, she suffered an adverse employment action because she was denied the requested continued employment, regardless of the label."  (Emphasis added.)

The analysis and conclusion of the Second Circuit in <u>Leibowitz</u> cannot be denied.  See also <u>Nat'l R. R. Passenger Corp. v. Morgan</u>, <u>536 U.S. 101, 114</u>, <u>122 S.Ct. 2001</u> (2002); <u>McDonnell Douglas v. Green</u>, <u>411 U.S. 792, 794-96</u>, <u>93 S.Ct. 1817</u> (1973).  Dr. Spears clearly sought renewal of her employment contract.  See Spears Aff., ¶¶13, 14, Ex. Q, T.

Quite apart from its failure to address these pivotal legal issues, Louisiana College ignores the disputed factual issues.  It is only necessary to casually review Plaintiff's Response to Defendant's Statement of Undisputed Facts to see that Defendant's Motion for Summary Judgment cannot succeed: there are genuine issues of material fact that preclude summary judgment in favor of Louisiana College.

Louisiana College erroneously assumes – and wants the Court to believe – that Dr. Spears was not a "tenured" member of the faculty at Louisiana College at the time of her purported

termination.  There is no basis for this suggestion.[10]  Louisiana College admits that Dr. Spears became tenured in 1984 (Answer, ¶6).  The burden therefore rests upon Louisiana College to show that she lost her tenure.  Louisiana College has failed to do so.  Section 2.5.1 of the Faculty Handbook, quoted *supra* at p. 2-3, clearly provides that a tenured faculty member can be termianted only for cause.[11]  Tenure was originally designed to protect "academic freedom" by preventing arbitrary or repressive dismissal.  See Thorne v. Monroe City School Board, 542 So.2d 490 (La. 1989) [dissenting Opinion of Justice Dennis].  See also McAdams v. Marquette University, 383 Wisc 2d 358, 914 N.W. 2nd 708 (2018).  Black's Law Dictionary (10th ed.) defines "tenure" as the "status afforded to a teacher or professor as a protection against summary dismissal without sufficient cause." It is an undisputed fact that **no** proceeding to terminate Dr. Spears' tenure has ever been instituted.  Spears Aff., ¶22. The fact that Dr. Spears "retired" in order to protect her medicare and prescription benefits does not mean that she forfeited or

_____

[10]  Louisiana College recognized that Dr. Spears was a "full time" professor in its job description provided to Guidestone on her application for "long term disability benefits."  See Tassin Dep., pp. 69-70, Ex. P-9.  See also Aguillard Dep., Exs. 2 & 4.  See also Faculty Handbook, Section 2.2.1 (The Ranked Faculty), which provides:

> "A ranked faculty member is a full-time employee at Louisiana College who has been appointed to one of the four regular academic ranks: Instructor, Assistant Professor, Associate Professor, or Professor. ..."

[11]  Section 2.11.4 of the Faculty Handbook provides that:

> "Dismissal is the termination for **adequate cause** of a tenured faculty member or of a non-tenured faculty member prior to the expiration of his or her current contract. 'Adequate cause' includes, but is not limited to, **incompetence, breach of contract, failure to teach or work in accordance with and not contrary to the Baptist Faith and Message 2000, repeated neglect of faculty or institutional duties, violation of College policies after warning, insubordination, dishonesty, or moral turpitude.** 'Moral turpitude' is conduct done knowingly contrary to justice, honesty, or good morals. ..."

otherwise lost her tenured status.[12]  The fact is that she continued to teach at Louisiana College

full-time for ten (10) years after she supposedly "retired."  The fact that she executed one-year

term contracts successively proves absolutely nothing except that it was the customary practice at

Louisiana College (and other secondary schools as well).  *All* faculty members at Louisiana

College are required to sign one (1)-year contracts.  Despite Louisiana College's representation to

the contrary, Dr. Spears was a fully tenured member of the faculty at the time she was terminated.

Moreover, she was not terminated for cause.  Her termination was a breach of contract.[13]  See

*infra* at pp. 29-33.

Similarly, Dr. Spears was not an "adjunct" professor.  An "adjunct" professor generally

teaches one or more courses, but less than a "full" teaching load.  See Spears Aff., ¶18, Ex. X.

See Okuarume v. Southern University, 245 So.3d 1260 (La. App. 4th Cir. 2018).  Dr. Spears was

a full-time member of the faculty.  She regularly taught twelve (12) hours per semester.

Louisiana College attempts to explain (Brief, pp. 4-5) the "demotion" of Dr. Spears in the

stripping of her positions as Chair and Coordinator of the Health and Physical Education (and

---

[12]  Dr. Joe W. Aguillard, while President of Louisiana College, officially verified that Dr. Spears was a full time Senior Professor with tenure and all benefits and accommodations that she had *before* accepting the insurance benefit package in 2007.  See Aguillard Aff., ¶5, Ex. B.  He also wrote a letter dated May 8, 2014, while he was President of Louisiana College confirming her tenured status.  Aguillard Aff., ¶5, Ex. C.  Louisiana College has produced records purporting to show that Dr. Spears "retired" on three separate dates: July 31, 2007 (Spears Aff., ¶6, Ex. D); December 1, 2016 (Medicare Coordinating Plan) (Spears Aff., ¶6, Ex. E); and June 1, 2017 (Guidestone Letter dated May 10, 2017) (Spears Aff., ¶6, Ex. F).  Her application for "sick leave" did *not* require her to retire.

[13]  Louisiana College has not sought summary judgment on this state law breach of contract claim.  While Louisiana College denied in its answer that Dr. Spears was a "tenured" or full-time professor [see, e.g., Complaint, ¶4; Answer, ¶4; Complaint, ¶24; Answer, ¶24], it has not claimed it had "adequate cause" for her dismissal nor has it produced any evidence showing a termination of her tenure.  The burden of proof on this issue is on Louisiana College.

correspondingly reducing her salary) "as a result of re-organization of several departments within Louisiana College prior to the 2016-17 school year, including Health and PE." Louisiana College euphemistically asserts (p. 4) "[s]pecifically, the College elected to transfer the department beginning August 1, 2016, from the College of Education to the College of Nursing and Allied Health *in order to conform with conventional practices*, and expand the nature of the College's course and degree offering." This is pretext, pure and simple. Louisiana College cannot identify a *single higher education institution* in Louisiana or Mississippi where the Department of Health and Physical Education is under the School of Nursing and Allied Health.[14] Sharp Dep., pp. 11-17. It is passing strange that this decision was made without seeking any input or communication from Dr. Spears particularly in view of her experience and education.

The transfer of the Health and Physical Education Department to the College of Nursing and Allied Health was contrived in an attempt to disguise Louisiana College's discrimination against Dr. Spears because of her disabilities, her age and her gender and in retaliation against Dr. Spears for having written a complaint against Dr .Cheryl Clark that Louisiana (and Dr. Clark) had obtained by converting and hacking Dr. Aguillard's computers.[15]

The Court will recall that in his letter of dismissal Dr. Brewer stated that Louisiana

---

[14] That is not the case at Southern Mississippi State College where Dr. Clark received her advanced degree or the case at Charleston Southern University where Dr. Brewer was employed before he came to Louisiana College.

[15] Dr. Aguillard's computers were physically seized on September 28, 2015. Among the confidential documents contained on his computer was a draft whistleblower compliant responding to Dr. Clark's attacks on Dr. Spears before the Academic Council in April of 2015, and a draft EEOC Charge against Louisiana College. Dr. Clark admitted that Shane Davis, LC's technology director, obtained this information off of Dr. Aguillard's computers. Clark Dep., pp. 18-19; Spears Dep., pp. 50, ll. 18-25, 51, ll. 1-4.

College had chosen to go in a "different direction."  This could possibly refer to the transfer of the Physical Education and Health Department from the School of Education to the School of Nursing and Allied Health Care.  However, the Louisiana College Faculty Handbook requires in this connection that if there are changes to be made in an academic program, those changes must be approved by a majority vote of the Board of Trustees as a whole *before any faculty member can be dismissed*.  None of the Faculty Handbook's requirements for a "change in direction" by transferring the Health & Physical Education program were followed.  See Faculty Handbook, Section 2.11.3.2, which provides that:

> "Termination or layoff of a tenured faculty member may occur as a result of the formal discontinuance or redirection of a program or department of instruction. The decision to formally discontinue or change a department or program will be based on regular review of academic departments and programs by the Vice President for Academic Affairs, a department's or program's self-review, declining enrollment, or other documented market factors. *A recommendation to the Board of Trustees to change a department or program will be made by the Vice President for Academic Affairs or the President, and all changes in the education program shall be made by the Board of Trustees*. Such decisions will be based upon educational considerations which reflect the long-range judgment that the educational mission of the College will be enhanced by the change(s). Which faculty member or members will be terminated or laid off will then be determined by the President advised by the Vice President of Academic Affairs."[16] (Emphasis added.)

See Spears Aff., ¶5, Ex. C(2).

---

[16]  The Faculty Handbook also provides guidance instructions in this connection.  Section 2.11.3.3 provides:

> "When faculty reductions are considered, *tenure rights will be protected insofar as possible. A tenured faculty member will not be terminated in favor of a non-tenured faculty member* except in extraordinary circumstances where a serious distortion of the academic programs would otherwise result."  (Emphasis added.)

No extraordinary circumstances exist here and Louisiana College has pointed to none.  The Tinsleys were not even faculty members at the time!

Dr. Brewer falsely represented to the Board of Trustees that Dr. Spears had "retired" and "was not coming back."  Actually, and in truth and reality, Dr. Spears had taken a "break" and was on "sick leave" at the time.  Spears Aff., ¶9, Ex. K; Spears Dep., p. 19.  The "sick leave" policy does not require a faculty member to retire.  Louisiana College knew Dr. Spears intended to return to her employment starting in August, 2017.[17]

Louisiana College further asserts parenthetically in this connection that (Memo., p. 6):

"As background, Ms. Spears was diagnosed with Cancer in 2015, underwent chemotherapy treatment in 2015 through April 2016, and as of August, 2016, was no longer receiving treatment and was in remission.  In fact, Dr. Spears acknowledges that as of August 2016 she was not receiving any medical treatment related to the Cancer, and, thus, was **not** disabled and, in fact, able to work, despite her leave request; she requested leave simply because she "wanted a break."  Notably, she acknowledges that she did not represent to the College that she was disabled or unable to work when submitting the leave request.)"

*No medical* evidence exists which would show or tend to show that Dr. Spears was "in remission" in 2016-2017.  Exhibit "J" cited by Louisiana College does not even mention or use the word "remission."  Following Dr. Spears' radiation treatment at M.D. Anderson in Houston, she began Chemotherapy Treatment with Dr. Abi-Rached (Oncologist in Alexandria working via M.D. Anderson).  The dates of her Chemotherapy Treatment were April 13, 2016, May 4, 2016, May 25, 2016, and June 15, 2016.   Dr. Spears had lost all of her hair and her skin was a greenish yellow color.  It was the day after one of these treatments (probably, the May 4, 2016 treatment) that Dr. Clark had Dr. Spears come to her office - bald and sick – and told her (Dr. Spears) that she was taking the Division Chair and Department Coordinator positions away from her, and that

---

[17] In an email dated March 16, 2017, Dr. Spears advised Shannon Tassin "I will be paid my full contract for this year getting checks thru July 31st and then *start next years contract when I start back August 1*?  Then **when I sign my next years contract**, my insurance will switch back to what it was before I wen on sick leave and disability. ..."  (Emphasis added.)

she (Dr. Clark) was moving Health & Physical Education to Nursing.  Dr. Spears argued with Clark about this to no avail.  Spears Dep., p. 34.  Dr. Clark told her "she would just have to live with it."  Spears Aff., ¶12.

Dr. Spears was devastated mentally and physically as a result of her radiation and chemotherapy treatments.  She expressly requested an "accommodation" for her teaching schedule for the coming year.  Dr. Clark promptly denied the accommodation request and refused to even discuss the request.  A request for an "accommodation" is plainly a "protected activity." Tabatchnik v. Continental Airlines, 262 Fed. Appx. 674, 676 & 676 n. 1 (5th Cir. 2008); Jones v. U.P.S., Inc.,502 F.3d 1176, 1194 (10th Cir. 2007); Wright v. Compusa, Inc., 352 F.3d 472, 478 (1st Cir. 2001).  Dr. Clark refused to discuss the issue.

The testimony of Dr. Brewer and Dr. Clark as to how the decision to terminate Dr. Spears was made is directly contradictory.  It cannot be reconciled.  Dr. Clark testified that she had **nothing** to do with Dr. Spears' dismissal and that she never even **discussed** the issue with Dr. Brewer.  Clark Dep., p. 35, ll. 16-25.  Dr. Brewer, on the other hand, testified that he terminated Dr. Spears on the **recommendation** of Dr. Clark.  Although it is not necessary for the Court to resolve this conflict, the Court will recall that Dr. Clark also **denied** that she called Dr. Spears' classes a "joke," notwithstanding the testimony of Dr. Smith-Ross [Dep., p. 26] and Dr. Karen Sharp [Dep., pp. 30-31], both of whom personally heard her statements, and notwithstanding Dr. Clark's private conversations with Dr. Sharp.  *Id*.  It is highly likely that Clark discussed the termination of Dr. Spears with Dr. Brewer, particularly in view of her position and Dr. Spears'

complaint addressed to Dr. Brewer that was retrieved from Dr. Aguillard's computer.[18]

Then, there are the inconsistent statements of Dr. Brewer himself.  In sharp contrast to his vague "change of direction" in his letter of dismissal (mailed two months *after* its date), Dr. Brewer, in his response to Ms. Charlotte Dossmann McIntosh's letter posted on Facebook (see *supra*, pp. 23-27), falsely represented that Plaintiff "retired from the full time faculty at LC in 2007," that Plaintiff was an "adjunct" professor and that Plaintiff was paid "her full salary for two years without her ever teaching a single student," which falsely implied that Dr. Spears was a "free loader" or "gold digger."   These comments were and are completely false and pretextual. Plaintiff not only taught during the time period specified by Dr. Brewer but exceeded her hour requirement as Division Chair, while also teaching "overloads."  Plaintiff in fact taught over four hundred (400) students during the time described by Dr. Brewer.  See Spears Aff., ¶18.  In 2016, Plaintiff even completed her Spring semester while undergoing radiation at M.D. Anderson.  In contrast to Plaintiff, adjuncts are hired to teach specific courses on a semester basis only.  As previously noted (*supra*, pp.  11, 12, 15), Dr. Brewer's "explanation" was knowingly false in multiple respects.

At his deposition, Dr. Brewer had a different explanation: He claimed that he dismissed Dr. Spears because of her "illness and poor health."  Brewer Dep., pp. 18-23.  Dr. Brewer had no medical evidence to support this contention at the time he made the decision to terminate Dr. Spears (letter dated February 20, 2017).  It is crystal clear from Dr. Spears' e-mail to Shannon Tassin dated March 16, 2017, that she (Dr. Spears) was seeking to return to her position.  See

---

[18]  Dr. Brewer undoubtedly heard about Dr. Clark's assault promptly after the comments, since the news spread throughout the campus.

Spears Dep., Ex. 11 ("... I will be paid my full contract for this year getting checks thru July 31st and then **start next years contract when I start back August 1**.  Then **when I sign my next years contract**, my insurance will switch back to what it was before I went on sick leave and disability. ..."  (Emphasis added.)  Significantly, Ms. Tassin *limited* her confirmation to "Your 2016-17 contract will be paid out with the April 23, 2017 payroll."  Tassin *knew* more than she was revealing.   On April 19, 2017, Ms. Tassin subsequently mailed Dr. Spears a copy of Dr. Brewer's letter dated February 20, 2017, declining to renew her employment contract.  Tassin Dep., p. 83. This was the *first* time Plaintiff had knowledge of her dismissal.  Spears Aff., ¶13.

Louisiana College incredibly asserts in this connection that Dr. Spears has no "direct evidence"[19] to support her allegation of discrimination on the basis of age" or of disability (Memo., pp. 53-54).  There is no basis for Louisiana College's attempt to limit the Court's analysis to a consideration to the "direct evidence."  It is settled law that "discrimination under Title VII, the ADEA, or the ADA can be established through either direct or circumstantial evidence."  See Desert Palance, Inc. v. Costa, 539 U.S. 90, 92-93, 123 S.Ct. 2148 (2003); Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007).  As the Fifth Circuit has recognized, "[a]bsent direct evidence of discriminatory intent, *as is typically the case*, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of McDonnell Douglas Corp. v. Greene, 411 U.S. 762, 93 S.Ct. 1817 (1973)."  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000) (Emphasis added.).  The dichotomy between "direct" evidence and "circumstantial" evidence does not provide a solution in this case.

---

[19] "Direct evidence" is "evidence that, if believed, proves the fact of discriminatory animus without an inference or presumption.  West v. Nabors Drilling USA, Inc., 336 F.3d 379, 384, n. 3 (5th Cir. 2003).

Circumstantial evidence is frequently more persuasive and more powerful than "direct" evidence. The Court is obliged to consider *all* of the evidence – both direct and circumstantial, particularly in analyzing the causal connection between a protected activity and the alleged retaliatory acts. As the Court observed in Kachmar v. Sungard Data Syustems, Inc., 109 F.3d 173, 177 (3ʳᵈ Cir. 1997), it is causation, not temporal proximity, that is the issue. "[T]emporal proximity" is "not the exclusive way of showing causation, as the proffered evidence, looked at *as a whole, may suffice to raise the inference*." These conclusions of Kachmar have been generally accepted. See Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4ᵗʰ Cir. 2007); Dixon v. Gonzales, 481 F.3d 324 (6ᵗʰ Cir. 2007); Porter v. California Dept. Of Corr., 419 F.3d 885, 895 (9ᵗʰ Cir.2005); Richmond v. Oklahoma Univ. Bd. Of Regents, 162 F.3d 1174 (10ᵗʰ Cir. 1998); Ward v. United Parcel Service, 580 Fed. Appx. 735 (11ᵗʰ Cir. 2004); Carlson v. ESX Transp., Inc., 758 F.3d 819, 829 (7ᵗʰ Cir. 2014). See also Marra v. Philadelphia Housing, 497 F.3d 286, 302 (3ʳᵈ Cir. 2007) (holding, among other things, that a vandalized computer was evidence of a pattern of antagonism); Reardon v. Herring, 201 F.Supp. 3ʳᵈ 782 (E.D. Va. 2016).

Like the trial court in Kachmar, *supra*, Louisiana College erroneously ignores the "pattern of antagonism" that shows that a "causal" connection between Dr. Spears' "protected activities" and LC's repeated retaliations, including Dr. Clark's stripping her of her duties and responsibilities as Chair and Head of the Department of Health and Education.[20] The "pattern of

---

[20] The "causal link" element of a *prima facie* case merely requires plaintiff "to establish that the protected activity and the adverse action were not wholly unrelated." Simmons v. Camden County Bd. of Education, 757 F.2d 1187, 1189 (11ᵗʰ Cir. 1985), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385 (1985). The "causal link" for Title VII retaliation claims involves the "but for" analysis of causation. See University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338, 133 S.Ct. 2517 (2013). In Burlington, *supra*, the Supreme Court held that the Title VII retaliation provision is *not* limited to employers' actions that affect the terms, conditions or status

antagonism" in this case began in April of 2015, when Dr. Clark publicly announced that Dr. Spears' classes were a "joke."  It continued until she was terminated.

**B.**    **Louisiana College is not entitled to summary judgment on Plaintiff's Defamation Claim.**

Plaintiff's defamation claim is a state law claim governed by Louisiana law.  Under the applicable Louisiana law, four (4) elements are necessary to establish a cause of action for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault of negligence or greater on the part of the publisher; and (4) resulting injury.  Costello v. Hardy, 864 So.2d 129, 139 (La. 2004).  The alleged defamatory communication in this case is Dr. Brewer's reply to a letter from Charlotte McIntosh, Dr. Spears' sister.  See Spears' Aff., ¶¶13, 17, Ex. W. Dr. Brewer's letter states, among other falsities, that Louisiana College had paid Dr. Spears "her full salary for two years ***without her ever teaching a single student***, although the College was not obligated to do so." (Emphasis added.)

"Defamatory words" are words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule.  Words which convey an element of personal disgrace or disrespect are defamatory.  See Costello, *supra* at 140, and there is no doubt that this letter is defamatory; it accuses Dr. Spears of being a "golddigger" or "freeloader."  It held her up to contempt and ridicule.  As the Supreme Court explained in Costello (*id*. at 140):

> "... The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. Sassone,

of an employee's employment or to employers' actions that occur at the workplace.

626 So.2d at 352. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. ..."

The comments with respect to the Facebook posting clearly show that the readers considered the letter defamatory of Dr. Spears.  See Spears Aff., ¶17, Ex. W.

It is undeniable that the letter was "published;" it was not only sent to the Board of Trustees of Louisiana College and leaders of the Louisiana Baptist Convention, but it was incredibly posted on Facebook for all the world to see.  Nor is there any substantial doubt that the defamatory communications were false.  The communication was false in three (3) specified respects as previously noted.  *Supra*, p. 23.

In defamation law, malice (or fault) is a "lack of reasonable belief in the truth of the statement giving rise to the defamation."  Costello, *supra*, at 143.  The documentary evidence maintained by Louisiana College, which was readily available to Dr. Brewer in the Registrar's Office, shows Dr. Brewer was reckless, at the very least, in publishing the defamatory statements and had no reasonable grounds for believing his statements were true.  Moreover, this dispute was not a matter of public interest and concern.  It was a private contract dispute.  The documents and information disclosed by Dr. Brewer were clearly "confidential" under Section 2.3.3 of the Louisiana College Faculty Handbook and protected against disclosure, since they disclose "actions pertaining to the appointment, promotion, tenure, ***termination and dismissal***" of Dr. Spears.  Spears Aff., ¶19, Ex. AA. Dr. Spears never consented to the disclosure of these materials from her "Personnel File."  Spears Aff., ¶19.   Dr. Brewer's disclosure of this information was a clear invasion of Dr. Spears' privacy and a breach of her contract.

For all of these reasons, Louisiana College is not entitled to summary judgment on

Plaintiff's defamation claim.  There are disputed questions of fact which prohibit summary judgment on this state law claim.  Louisiana College is not entitled to judgment as a matter of law.

## II.  Plaintiff's Cross-Motion For Partial Summary Judgment

This brings us to a consideration of Plaintiff's Cross-Motion for Partial Summary Judgment.  Plaintiff seeks partial summary judgment on three (3) grounds:

    (a)    Plaintiff's claim for discrimination under the ADEA;

    (b)    Plaintiff's claims based upon "retaliation" under Title VII; and

    (c)    Plaintiff's state law claims for breach of contract.

These claims will be discussed in the order stated.

## A.    Plaintiff's claim for Discrmination Under The ADEA.

To establish a *prima facie* case of discriminatory discharge under the ADEA, plaintiff must show that:

    (1)    she is a member of the protected class (age 40 or older);

    (2)    she was qualified for the position she held;

    (3)    she was discharged; and

    (4)    she was replaced by someone outside the protected class (she was replaced by someone younger or she was otherwise discharged because of her age).

See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000); Berquist v. Washington Mut. Bank, 500 F.3d 344,348-49 (5th Cir. 2007); Evans v. Texas Department of Transportation, 547 F.Supp.2d 626 (E.D. Texas 2007).

It is clear that:

(1)    Dr. Spears had a written employment contract with Louisiana College (Spears Aff., Ex. B;

(2)    Dr. Spears was as a "tenured member" of Louisiana College's Faculty (Spears Aff., ¶2);[21]

(3)    Louisiana College terminated Dr. Spears for lack of "adequate cause;" and

(4)    Dr. Spears was damaged.

Plaintiff was seventy-five (75) years old at the time she was terminated.  She is, therefore, a member of the protected class.  She was eminently qualified for the position she held.  She was discharged from that position, and she was replaced by a younger male, namely, Jason Tinsley. These are uncontested facts.  Plaintiff has, therefore, established a *prima facie* case of discrimination under the ADEA.

Having established a *prima facie* case of age discrimination, the burden of production shifts to Louisiana College to articulate a legitimate on-discriminatory reason for her termination. Evans, *supra* ("The purpose of this step is 'to force the defendant to give an explanation for its conduct, in order to prevent employees from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent,'" *quoting* Stratton v. Department for the Aging for the City of N.Y., 132 F.3d 869, 879 (2nd Cir. 1997).

The only purported justification now offered by Louisiana College for the termination of Dr. Spears is that the Department of Physical Education was transferred from the School of Education to the School of Nursing and her position was thereby eliminated.  That is pretext, pure and simple: Moreover, Dr. Spears' termination under these circumstances is prohibited by

---

[21] Although Louisiana College **denies** that Dr. Spears was tenured at the time of her termination, it has the burden of proof on this issue and it has failed to produce any **evidence**.

the Faculty Handbook.  See *supra*, pp. 2-3.  Tinsley teaches the exact same courses ***after*** the

transfer that Dr. Spears taught ***before*** the transfer.  That is not a "legitimate, non-discriminatory

reason" for Plaintiff's termination.  Plaintiff is entitled to summary judgment on her ADEA

claim.

**B.**   **Plaintiff's claims for Retaliation.**

Title VII prohibits retaliation against an employee who has engaged in an activity

protected by the Act.

> "It shall be an unlawful employment practice for an employer to discriminate against any
> of his employees . . . because he has opposed any practice made an unlawful employment
> practice by this subchapter, or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or hearing under this
> subchapter.  42 U.S.C. § 2000e-3(a)."

See Evans, *supra*, at 653.

To establish a *prima facie* case of retaliation, plaintiff must show:

1)      she engaged in a statutorily protected activity under Title VII;

2)      action was taken by the employer against plaintiff that a reasonable employee
        would consider materially adverse; and

3)      a causal connection exists between the protected activity and the adverse action.

See Jenkins v. City of San Antonio, 784 F.3d 263, 269 (5th Cir. 2015); Evans, *supra*, and cases

cited.

The summary judgment evidence shows that Dr. Clark, at a meeting of the Academic

Counsel on April 22, 2015, personally attacked Dr. Spears' courses as a "joke."  Although

Plaintiff was not present at the meeting, Dr. Smith-Ross, her supervisor, and Dr. Karen Sharp

promptly told her about Dr. Clark's comments.  Plaintiff was devastated. She discussed the

situation with Dr. Joe W. Aguillard and Dr. Mike Shamblin, her colleagues on the faculty at Louisiana College and they began a draft of an EEOC complaint and a "whistleblower" complaint to Dr. Brewer.  While this EEOC charge and "whistleblower" complaint were being drafted, Louisiana College seized [on September 28, 2015] and hacked Dr. Aguillard's computers.  While the summary judgment evidence does not show exactly *when* the charge or complaint on behalf of Dr. Spears were actually obtained by Louisiana College, it was clearly *before* the FAAC hearing regarding Dr. Aguillard was held on February 23, 2016.  Louisiana College used the drafts of the EEOC charge and "whistleblower" complaint *against* Dr. Aguillard the FAAC hearing on February 23, 2016.  Although the FAAC hearing was directed at Dr. Aguillard, Louisiana College (and Drs. Brewer and Clark) took the opportunity at the hearing to attack Dr. Spears.

As previously noted, Dr. Clark notified Dr. Spears in July of 2016 that the Department of Health and Physical Education was being re-organized and re-structured by moving the Health and Physical Education to the Department of Nursing/Allied Healthcare.  In addition, Dr. Clark demoted Dr. Spears by stripping her positions as Chair and Coordinator of the Department of Health and Physical Education and, correspondingly, reducing her salary by approximately $500 per month.  These were all adverse employment actions.

Plaintiff filed her complaint with the EEOC on January 25, 2017, charging Louisiana College with discrimination and retaliation due to her age, gender and disability.  See Spears Aff., ¶13, Exs. M-Q.  Plaintiff supplemented her EEOC complaint on March 2, 2017.  Louisiana College was served with the EEOC complaint on March 6, 2017.  Louisiana College was thus fully informed about Plaintiff's charges with the EEOC *before* it terminated her by letter dated

February 20, 2017 (but received on April 22, 2017, terminating Dr. Spears' employment on July 31, 2017.  See Tureaud v. Grambling State University, 294 F.App'x 909, 914 (5th Cir. 2008). Plaintiff subsequently amended her EEOC charge on June 4, 2017, to claim that Louisiana College had **retaliated** against her by terminating her employment.

Filing an EEOC claim is clearly a "protected activity."  Less than a month **after** being served with Plaintiff's EEOC charges, Louisiana College notified her that her contract would not be renewed.  Given the temporal proximity, the termination of Dr. Spears is presumably the result of her filing an EEOC complaint.  See, e.g., Shirley v. Chrysler First, Inc., 970 F.2d 59 (5th Cir. 1992) (Plaintiff fired fourteen months after filing EEOC complaint and two months after complaint was dismissed); Evans v. City of Houston, 246 F.3d 344 (5th Cir. 2001) ("... closing timing between an employee's protected activity and an adverse action against [her] may proivde the causal connection required to make out a prima facie case of retaliation and that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.").

Moreover, this "temporal proximity" is strongly supported in this case by the "pattern of antagonism" that began on April 22, 2015, when Dr. Clark personally attacked Dr. Spears before the Academic Council and persisted in the antagonism until Dr. Spears' termination, including the adverse employment actions taken by Dr. Clark in demoting Dr. Spears in July of 2016.  See *supra*, pp. 8, 15.

**C.**    **Plaintiff's Claim for Breach of Contract Claim.**

There are three (3) essential elements of a breach of contract case:[22]

(1)      defendant owed plaintiff an obligation;

(2)      defendant failed to perform that obligation; and

(3)      defendant's failure to perform resulted in damages to plaintiff.

See, e.g., Hays Fund For the First United Methodist Church of Welsh, L.L.C. v. Kerr-McGee

Rocky Mountain, L.L.C.,193 So.3d 110 (La. 2015); Guillory v. Broussard, 194 So.3d 764 (La.

App. 3rd Cir. 2016); Bruneau v. Crescent City Cleaning Services Corporation, 209 So.3d 286 (La.

App. 5th Cir. 2016).

Plaintiff has attached a copy of her written employment contract for the term August 17,

2015, to May 7, 2016, with Louisiana College to her cross-motion for partial summary

judgment.[23]  The Employment Contract expressly provides that:

> "Dr. Spears will have the rank of Senior Professor with a $47,429 salary, up to
> $3,684 for social security, 0 for retirement, and $12,310 for insurance; a total expenditure
> by the College of at least $63,432."

It further provides:

---

[22] The Court will note that Louisiana College has not moved for summary judgment on the issue of breach of contract.  Thus, it is clearly not entitled to a dismissal of Plaintiff's suit. Incredibly, Louisiana College has suggested (off the record) that Plaintiff has not asserted a cause of action for breach of contract.  There is no basis for this argument.  Plaintiff has clearly alleged (1) the existence of an employment contract (Complaint, ¶4); (2) the incorporation by reference of the provisions relating to tenure (id.); (3) the termination of the employment contract without "adequate cause" (Complaint, ¶¶10, 15, 16, 24); and (4) damages.  Plaintiff prays for all relief to which she is entitled under the applicable law.  That is clear notice of the claim which is all that federal law requires.  Tenure, which Louisiana College desperately seeks to avoid, is a central element of Plaintiff's breach of contract claim.

[23]  Plaintiff erroneously alleged in her Complaint that she had attached a copy of her last employment contract with Louisiana College as Exhibit 1.  This was an error.  The copy of the contract attached to the Complaint was for a prior year.  A correct copy of her last employment contract is attached to Plaintiff's Affidavit.  Spears Aff., ¶4, Exhibit B.

"Dr. Spears will teach at least twelve (12) hours in the fall and at least twelve (12) hours in the spring in the Department of Health and Physical Education.  She is the holder of the Claude Kent Kirkpatrick Professorship in Health and Physical Education."

Although the Employment Contract does not mention the term "tenure" itself, it expressly provides that:

"... This contract is offered and the employee agrees to be under the authority of and in compliance with the guiding governance documents of the College as they may be amended throughout the term of this contract.  This appointment is subject to ... all college policies as they may be amended during the contract year including, but not limited to, those set forth in the <u>Faculty Handbook</u> (with special notice given to Section 11 and 2.4.3.4 as attached to the contract).  ... ***Said policies are hereby made a part of the terms and conditions of this contract the same as though they had been expressly set forth***."  (Emphasis added.)

Plaintiff's Employment Contract thus incorporates by reference relevant provisions of the Faculty Handbook, including the provisions relating to "tenure" and the provisions relating to the confidentiality of her "personnel file."[24]  See <u>Schalow v. Loyola University of New Orleans</u>, <u>646 So.2d 502</u> (La. App. 4th Cir. 1994); <u>Olivier v. Xavier University</u>, <u>553 So.2d 1004</u> (4th Cir. 1990), *writ denied* <u>556 So.2d 1279</u> (La. 1960); <u>Smith v. Bd. Of Supervisors for the Univ. Of La. Sys.</u>, <u>2015 WL 10663156</u> (E.D. La. 2015).

It is an undisputed fact that Plaintiff became a "tenured" professor at Louisiana College in 1984.  See Complaint, ¶6; Answer, ¶6). Therefor, the burden of showing that Plaintiff lost or was stripped of her "tenure" rests squarely on the shoulders of Louisiana College.  Although Louisiana College has denied that Plaintiff was "tenured" at the time of her dismissal (see Answer, ¶¶12, 24), it has produced ***no*** evidence showing that Plaintiff somehow lost or was

---

[24]  As the Court of Appeal found in <u>Jones v. Southern University and A&M College System</u>, <u>693 So.2d 1265, 1269</u> (La. App. 1st Cir. 1997), "[i]t is undisputed that a tenured law professor ***possesses a property interest in his position*** which requires due process protection under both the state and federal constitutions."  (Emphasis added.)

"stripped" of her tenure at any time.[25]

Under the provisions of Section 2.5.1 (Definition of Tenure) of the Faculty Handbook (quoted *supra* at p. 2-3), Dr. Spears could be terminated only for "adequate cause."  Section 2.11.4 of the Faculty Handbook (quoted *supra*, p. 14, fn. 11) defines "cause" generally as:

> "... incompetence, breach of contract, failure to teach or work in accordance with and not contrary to the *Baptist Faith and Message 2000*, repeated neglect of faculty or institutional duties, violation of College policies after warning, insubordination, dishonesty, or moral turpitude. ..."

According to Dr. Brewer's letter of termination dated February 20, 2017 (received by Dr. Spears on April 22, 2017), Dr. Spears was terminated because Louisiana College had "decided to go in a different direction."  That clearly is not "cause" within the meaning of Sections 2.5.1 or 2.11.4 of the Faculty Handbook (quoted *supra,* p. 2-3, 14, fn. 11). Nor is any of the other vacillating and contradictory "explanations" offered by Dr. Brewer.  As the Court of Appeal found in <u>Swetman v. Gerace</u>, <u>349 So.2d 977</u> (La. App. 1st Cir. 1977), *writ ref.* <u>354 So.2d 171</u> (La. 1977):

> "We disagree. Contracts can be either express or implied, LSA-C.C. Art. 1780. Silence or inaction may in some instances show an assent that creates an obligation. LSA-C.C. Art. 1817. It seems quite clear to us that there was a contract between plaintiffs and Nicholls. Plaintiffs fully expected to teach during the fall semester. Nicholls fully expected them to. ***Plaintiffs had tenure as teachers; had the university failed to employ them without legal cause, the university would have been liable.*** We therefore believe there was a contract." (Emphasis added.)

Louisiana College is not entitled to impeach its own letter of dismissal.  In any event, none of the other reasons assigned by Louisiana College constitute "adequate cause."  Louisiana College

---

[25]   The Faculty Handbook, Section 2.11.3.2, provides the procedures to be followed by Louisiana College when it seeks to terminate "tenure."  See <u>Olivier</u>, *supra*; <u>Munker v. Board of Supervisors</u>, <u>255 So.3d 718</u> (La. App. 2nd Cir. 2018).  There is *no* evidence that any such proceeding was ever instituted by Louisiana College to terminate Dr. Spears' tenure.  Spears Aff., ¶22.

clearly breached Plaintiff's employment contract.

There are no genuine issues of material fact with respect to these issues and Plaintiff is entitled to judgment on the breach of contract issue as a matter of law.

<u>Conclusion</u>

For all of the reasons assigned hereinabove, the Motion for Summary Judgment filed by Louisiana College should be denied and Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

THE PESNELL LAW FIRM
(A Professional Law Corporation)

*s/ Billy R. Pesnell*
By: _____
       Billy R. Pesnell
       Louisiana State Bar Roll No. 10533
       J. Whitney Pesnell
       Louisiana Bar Roll No. 15035
       W. Alan Pesnell
       Louisiana Bar Roll No. 23249

       H. C. Beck Building, Suite 1100
       400 Travis Street
       Shreveport, Louisiana 71101
       Post Office Box 1794
       Shreveport, Louisiana  71166-1794
       (318) 226-5577
       (318) 226-5578 (fax)

**ATTORNEYS FOR PLAINTIFF,
CAROLYN D. SPEARS**.

.