## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

**CAROLYN D. SPEARS**  **CASE NO. 1:18-CV-00387**

**VERSUS**  **JUDGE TERRY A. DOUGHTY**

**LOUISIANA COLLEGE**  **MAG. JUDGE MARK L. HORNSBY**

### RULING

Pending before the Court is a Motion for Summary Judgment filed by Defendant Louisiana College ("LC") [Doc. No. 24].  LC seeks judgment as a matter of law dismissing all claims made by Plaintiff Dr. Carolyn D. Spears ("Dr. Spears") in her Complaint, specifically claims of age, religion, gender, and disability discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e) ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"); and/or Title II of the Americans with Disabilities Act, 42 U.S.C. § 1231, *et seq*. ("ADA"). LC also seeks judgment as a matter of law dismissing Dr. Spears' state law claim of defamation.

 Dr. Spears filed an opposition to LC's Motion for Summary Judgment, and a Cross-Motion for Partial Summary Judgment [Doc. No. 34].  In her Cross-Motion, Dr. Spears contends she is entitled to judgment as a matter of law on her claim for discrimination under the ADEA and her claims based upon retaliation under Title VII.  Dr. Spears also asserts she has made a state law claim for breach of contract, and she seeks judgment as a matter of law on that claim.

LC filed a reply to Dr. Spears' opposition to LC's Motion for Summary Judgment, and an opposition to Dr. Spears' Cross-Motion for Partial Summary Judgment [Doc. Nos. 39, 40].  LC

asserts in its opposition that Dr. Spears did not assert a claim for breach of contract in her Complaint.

For the following reasons, LC's motion is GRANTED, and Dr. Spears' motion is DENIED.

## I.      FACTS AND PROCEDURAL HISTORY

LC is a nonprofit corporation which operates as a private, co-educational college of liberal arts and sciences. This Court has previously found LC to be both a "religious organization" under § 2000e-1(a) and a "religious school" under § 2000e-2(e)(2). *See Aguillard v. Louisiana College*, 341 F.Supp.3d 642 (W.D. La. 2018). Since April 2015, Dr. Richard Brewer ("Dr. Brewer") has served as its President.

Dr. Spears became a full-time member of the faculty, teaching in the Department of Health and Physical Education, in 1977. She became a tenured member of the faculty in 1984.

The parties disagree as to when Dr. Spears' tenure ended.  LC contends that Dr. Spears retired as a tenured professor effective July 31, 2007, and that she thereafter served in the role of Senior Professor-- an adjunct, non-tenured position. According to LC, as a Senior Professor, Dr. Spears was not tenured but instead served as an at-will employee whose year-to-year contracts were subject to non-renewal by LC.

Dr. Spears, on the other hand, contends that she remained tenured up until her termination, which was effective July 31, 2017.

Dr. Spears was diagnosed with adenocarcenoma in the fall of 2012. She was treated with a complete hysterectomy, followed by radiation. The cancer re-occurred, and she was diagnosed with Stage 4 cancer in 2014. Treatment (including both invasive and non-invasive procedures) immediately began and continued until June of 2016.

During this period of time, LC "accommodated" Dr. Spears' disability when she was required to be out of town for treatment at M.D. Anderson in Houston, Texas, and on other occasions. Her faculty colleagues agreed to take her classes when she was unavailable for medical reasons. Her employment contract did not include mandatory summer work.

Dr. Spears contends that, on or about April 22, 2015, Dr. Cheryl D. Clark, Vice-President of Academics, openly attacked her at a meeting of the Academic Council, calling the courses taught by her for years a "joke." Although Dr. Spears was not at the meeting, Dr. Carmacia Smith-Ross ("Dr. Smith-Ross"), Dr. Spears' immediate supervisor, and Dr. Kimberly Sharp ("Dr. Sharp"), Dean of the School of Nursing, were both present at the meeting, and they both reported the incident to Dr. Spears. Dr. Spears alleges Dr. Clark was also privately attacking her with the faculty, notably with Dr. Smith-Ross and Dr. Sharp.  She further alleges, that, even before her public attack on April 22, 2015, Dr. Clark had been harassing her.

According to Dr. Spears, LC, knowing that it had no cause for terminating her employment contract, deliberately adopted a strategy calculated to force her to resign.  As a result of the fear of the loss of her job, as well as the personal embarrassment, degradation, humiliation, and emotional distress she was suffering, she asserts that she consulted Dr. Michael P. Shamblin, Associate Vice-President; Dr. Smith-Ross; and Dr. Joe W. Aguillard, who at the time was "President Emeritus" and a fully tenured member of the faculty, to assist her in preparing and filing a "whistleblower" complaint and an EEOC complaint.

Dr. Aguillard had the "lead" in drafting the whistleblower and the EEOC complaints for Dr. Spears. He had a draft of the "whistleblower" and EEOC complaints on his computer when it was seized by Donald B. Connor, acting on behalf of Dr. Brewer and LC, on September 28, 2015.  LC obtained a copy of the confidential draft "whistleblower" and EEOC complaints from

the computer, which it offered into evidence at a FAAC hearing in February 2016 against Dr. Aguillard.  Although she was not present and no charges were directed toward her, Dr. Spears alleges that LC attacked her at the hearing, as if the hearing were directed at her. Dr. Aguillard was terminated effective March 31, 2016.

During the 2015-16 academic year, in addition to her teaching duties, Dr. Spears served as the Coordinator of the Department of Health and Physical Education and as Chair for the Division of Teacher Education.

On May 17, 2016, Dr. Spears (who was 75 years old at the time) entered into another "Senior Professor" contract for the 2016 –2017 school year; however, she was told she would no longer serve as the Coordinator of the Department of Health and Physical Education or Chair for the Division of Teacher Education. According to LC, this was the result of the reorganization of several departments within LC prior to the 2016-17 school year, including Health and Physical Education. Specifically, LC elected to transfer the department, beginning August 1, 2016, from the College of Education to its College of Nursing and Allied Health in order to conform with conventional practices, and to expand the nature of the College's course and degree offerings.

According to Dr. Spears, however, this explanation was mere pretext for discrimination against her.

Dr. Spears contends that the physical and mental stress of the cancer and its treatment devastated her.  Accordingly, she applied for and was granted sick leave on or about August 15, 2016.  She remained on sick leave until May of 2017.  Thus, even though she was under contract and was being paid, she taught no courses during the 2016-2017 school year.

Dr. Spears filed a complaint with the EEOC and the Louisiana Commission on Human Rights on or about January 25, 2017, alleging that LC had discriminated against her because of

her gender, religious beliefs, age, and disability, and alleging that LC had unlawfully retaliated against her.  She supplemented her EEOC charge by letter dated March 6, 2017, and again by letter dated June 4, 2017, to claim that LC had retaliated against her by terminating her employment and by publishing confidential information and false and defamatory allegations about her.

LC was served by the EEOC with Dr. Spears' charge on March 9, 2017.

Dr. Spears was terminated from her employment as a tenured professor by letter from Dr. Brewer dated February 20, 2017, effective July 31, 2017. The letter read:

> Dear Dr. Spears:
>
> On behalf of the Louisiana College faculty, staff, administration and trustees, please accept our collective gratitude for the many years of service you have rendered to the students, the College, and to the Lord.
>
> There are many who have sung your praises to me.  Chase Boyette mentioned his deep appreciation for you during the December commencement when he shared with the audience aspects of his Louisiana College experience.
>
> Though so many are your debtor for your years of service rendered, we have decided to move to a different direction with regard to your appointment as a Senior Professor at LC going forward, and therefore will not be renewing your contract for the 2017-18 academic year.
>
> We trust the Lord will continue to bless you as you serve him in the coming days.
>
> [Doc. No. 24-16]

Although this letter is dated February 20, 2017, Dr. Spears alleges that it was not received by her until April 20, 2017.  She implies that it was backdated to a date before LC was served by

her EEOC Complaints on March 9, 2017.  She concludes, therefore, that LC was aware of her

EEOC Complaints when she was terminated, and that she was terminated in retaliation.

This lawsuit followed.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment,

identifying each claim or defense--or the part of each claim or defense--on which summary

judgment is sought. The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The moving party bears the initial burden of informing the court of the basis for its motion by

identifying portions of the record which highlight the absence of genuine issues of material fact.

*Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A

party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to

particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or

nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if

the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.

*Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache*

*Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the

Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in

its favor. *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

**B.      Analysis**

The Court will first consider Dr. Spears's claims of age, religious, gender, and disability discrimination and retaliation.   The Court will thereafter consider the motions for summary judgment pertaining to Dr. Spears' defamation and breach of contract claims.

**1.      *Prima Facie* Case**

**a.      Age Discrimination**

Dr. Spears alleges that LC discriminated against her on the basis of her age. Both Dr. Spears and LC seek summary judgment as to this issue.

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." *See* 29 U.S.C. § 623(a)(1).

When a plaintiff alleges age discrimination, "liability depends on whether the protected trait actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141 (2000). More specifically, the individual's age must have "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." *Id.* at 141. Therefore, by a preponderance of the evidence, the plaintiff must prove that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177–78 (2009).

7

A plaintiff may prove her case by direct or circumstantial evidence. *Reeves,* 530 U.S. at 141. Evidence is direct when it "proves the fact of discriminatory animus without inference or presumption." *Terry v. Promise Hosp. of Ascension, Inc.,* CIV.A. No. 13–128–SDD, 2014 WL 4161581, at *5 (M.D. La. Aug. 19, 2014).  Evidence is circumstantial when an inference is required for the evidence to tend to prove discriminatory animus. *Id*., at * 5.  In order for comments to constitute direct evidence of age discrimination, they must be "1) age related; 2) proximate in time to the termination; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir.1996), *abrogated on other grounds* by *Spears v. Patterson UTI Drilling Co.,* 337 Fed. App'x. 416, 419 (5th Cir. 2009).

The burden-shifting framework of *McDonnell–Douglas* is used by courts if the plaintiff lacks direct evidence of discrimination. *Reeves,* 530 U.S. at 142–3. Under the *McDonnell–Douglas* framework, a plaintiff must establish a *prima facie* case of discrimination. To establish a *prima facie case* of age discrimination based on circumstantial evidence, a plaintiff must show she (1) was at least 40 years old, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) was replaced by someone younger or treated less favorably than similarly situated younger employees. *Smith v. City of Jackson, Miss.,* 351 F.3d 183, 196 (5th Cir. 2003).

If the plaintiff makes out a *prima facie* case, the burden shifts to the employer to produce evidence that adverse action was taken for a legitimate, nondiscriminatory reason. *Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 395 (5th Cir. 2002). If such a reason is produced, then the employee must provide evidence to rebut the reasons given as pretext for discrimination. *Id.*

As the Fifth Circuit instructed in *Moss v. BC Software, Inc*., 610 F.3d 917, 926 (5th Cir. 2010): "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the Courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated."

Here, Dr. Spears has produced no direct evidence of age discrimination.  Therefore, the Court must conduct the *McDonnel/Douglas* burden shifting analysis.  LC does not dispute that Dr. Spears can show the first three elements of a *prima facie* case:  She was at least 40 years old; she was qualified for the position; and she suffered an adverse employment action, as she was terminated.

However, LC asserts that Dr. Spears' contract was not renewed for the 2017-18 school year because she informed LC that she would not be returning upon requesting long term leave in 2016, and LC elected to approve her leave application and pay her in full for the 2016-17 school year, but to not renew the contract for the following year.

LC further asserts that Dr. Spears cannot show that she was replaced by someone younger or treated less favorably than similarly situated younger employees.  LC asserts that Dr. Spears was not replaced in her position as a Senior Professor by any individual; instead, her former courses were spread among the several remaining teachers at LC, including Dr. Sonia Tinsley, Jason Tinsley,  Janet Passman, Crystal Nelson, and Penny Reeves, [Deposition of Dr. Cheryl D. Clark, Doc. No. 24-12, pp. 15,16], which action does not constitute "replacement" for purposes of a *prima facie* claim of discrimination on the basis of age (or gender.) *Lilley v. BTM Corp*., 958 F.2d 746,752(6th Cir. 1992): "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."; s*ee also Hardy v. Shell Chem*

9

*Company*, 693 F. Supp. 2d 611, 620, N. 25 (E.D. La. 2010) ("When a plaintiff has been terminated and his job duties are reassigned to existing employees...the employee has not been replaced for purposes of establishing his *prima facie* case.").

Dr. Spears, on the other hand, asserts in one place in her Memorandum in Opposition that she was replaced by Jason Tinsley, a younger male, [Doc. No. 34-1, p. 32], but she asserts in a different place that she was replaced by both Jason Tinsley and Sonya Tinsley [Id., p. 16]. Additionally, in her Affidavit attached in support of her Motion for Summary Judgment, she states, "Louisiana College subsequently hired Dr. Sonia Tinsley and Jason Tinsley, who was the former 'basketball coach' to replace Appearer." [Doc. No. 34- 7, p.8]. She also states Jason Tinsley was not qualified for her position and that he was hired to teach, and taught, the same courses she taught. [*Id.*] Importantly, Dr. Spears points to *no evidence* in support of her contentions, other than her own contradictory assertions.

LC has shown that Dr. Spear's job duties were reassigned to existing employees. Dr. Spears has failed to establish a *prima facie* case because she has not carried her burden of showing that she was replaced by someone younger or treated less favorably than similarly situated younger employees. LC is thus entitled to judgment as a matter of law dismissing her ADEA claim, for that reason alone.

Additionally, LC has shown that the decision to award a 2016-17 Adjunct/Senior Professor Contract to Dr. Spears was made by Dr. Brewer, who likewise is over the age of 60 and, thus, in the same protected class as Dr. Spears. This allows LC to assert a judicial inference that no discrimination has occurred, as the Fifth Circuit has held that "discrimination is less likely when the supervisor is in the same protected class as the plaintiff." *McMichael v. Trans*

*Ocean Offshore Deep Water Drilling, Inc.*, 934 F.3d 447,461 (5th Cir. 2019) (citing *Kelly v.*

*Costco Wholesale Corp.*, 632 Fed. App'x.779, 783 (5th Cir. 2015)).

LC is thus entitled to judgment as a matter of law dismissing her ADEA claim, for the

reason that Dr. Spears has failed to establish a *prima facie* case of age discrimination.

**b.     Religious Discrimination and Retaliation Claims**

Dr. Spears asserts religious discrimination and retaliation claims under Title VII.

Title 42, United States Code, Section 2000e-2(a)(1) addresses discrimination claims and

provides:

> It shall be an unlawful employment practice for an employer to fail
> or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race, color, religion, sex, or national
> origin.

42 U.S.C. § 2000e-2(a)(1).

Title 42 United States Code, Section 2000e-3(a) addresses retaliation claims and

provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees ... because he has opposed
> any practice made an unlawful employment practice by this
> subchapter or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or
> hearing under this subchapter.

42 U.S.C. § 2000e-3(a)

However, Title VII has certain exemptions applicable to religious organizations and

educational institutions. Title 42, United States Code, Section 2000e-1(a) provides:

> This subchapter shall not apply to an employer with respect to the
> employment of aliens outside any State, or to a religious
> corporation, association, educational institution, or society with
> respect to the employment of individuals of a particular religion to

**11**

> perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a)

In addition, Title 42, United States Code, Section 2000e-2(e)(2) provides, in pertinent

part:

> Notwithstanding any other provision of this subchapter ... (2) it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institutional or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

42 U.S.C. § 2000e-2(e)(2)

LC moves for summary judgment, contending these exemptions apply and bar Dr.

Spears' Title VII religious discrimination and retaliation claims.

This Court has previously found LC to be both a "religious organization" under § 2000e-

1(a) and a "religious school" under § 2000e-2(e)(2) and therefore exempt from Title VII's

prohibitions regarding religious discrimination and retaliation. *See Aguillard v. Louisiana*

*College*, 341 F.Supp.3d 642 (W.D. La. 9/19/2018).

Accordingly, LC's Motion for Summary Judgment with regard to Dr. Spears' religious

discrimination and retaliation claims is GRANTED.  Those claims are DISMISSED WITH

PREJUDICE.

### c.    Gender-based Claim

Dr. Spears asserts a claim of gender-based discrimination.  To establish a *prima facie*

case of gender-based discrimination under Title VII, a plaintiff must show that (1) she was

within the protected class; (2) she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) the position sought was filled with someone outside the protected class.  *Farmer v. Mouton*, No. 16-16459, 2018 WL 1123573, at *5 (E.D. La. Feb. 28, 2018) *(citing Smith v. Woman's Hosp*., 671 Fed. App'x. 884, 888 (5th Cir. 2016)).

To show gender-based discrimination, Dr. Spears again argues that she was replaced in her position by a younger male, Jason Tinsley.  However, as indicated above, Dr. Spears points to no evidence in support of her contentions, other than her own contradictory assertions. Furthermore, LC has shown that Dr. Spear's adjunct position was not filled after the 2016-17 school year, and upon her taking leave for the 2016-17 school year, her courses primarily were re-assigned to female members of the College faculty; and after the reorganization of the Department of Health and Physical Education within the School of Nursing, the College hired Dr. Sonia Tinsley to serve as its Chair of the Allied Health Department.

Dr. Spears has failed to establish a *prima facie* case because she has not carried her burden of showing that she was replaced by someone outside her protected class.   LC is thus entitled to judgment as a matter of law dismissing her gender-based discrimination claim.

### d.    Disability Discrimination Claim

The ADA provides, in pertinent part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The ADA Amendments Act of 2008 ("ADAAA") makes its unlawful for covered employers to discriminate against a "qualified individual on the basis of a disability," which definition of "disability" may take the following forms:

1. A physical or mental impairment that substantially limits one or more major life activities;

2. A record of such an impairment; or

3. Being regarded as having such an impairment.

The ADAAA prohibits employers "from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *Burton v. Freescale Semiconductor, Inc.* 798 F.3d 222, 226-27 (5ᵗʰ Cir. 2015) (internal quotation marks omitted) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5ᵗʰ Cir. 2014)).

In a termination action under the ADA, the employee may either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII case.  *See Benson v. Tyson Foods, Inc.,* 2016 WL3617803 at*6 (E.D. Tex. July 6, 2016) (citing *LHC Grp.,* 773 F.3d at 694; *see also EEOC v. Chevon Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5ᵗʰ Cir. 2009)).

Direct evidence "is evidence that if believed, proves the facts of discriminatory animus without inference or presumption." *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 310 n.6 (5ᵗʰ Cir. 2004).

Absent direct evidence of discrimination, a plaintiff must make a prima facie case of discrimination by showing he (1) has a disability, was regarded as disabled, or has a record of a disability; (2) was qualified for the job; and (3) was subjected to an adverse employment decision on account of his disability. *Cannon v. Jacobs Field Services North America, Inc.,* 813 F. 3d 586, 590 (5ᵗʰ Cir. 2016) (citing *LHC Grp.,* 773 F.3d at 697).  "If he makes that showing, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Id*. at 590 (quoting *EEOC v. Chevron Phillips Chem. Co*.,

LP. 570 F.3d 606, 615 (5th Cir. 2009)). "The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* (citing *Chevron Phillips Chem. Co.,* 570 F3d. at 615.)

Dr. Spears does not point to any direct evidence of disability discrimination, but instead relies on circumstantial evidence [Plaintiff's Memorandum in Opposition, Doc. No. 34-1, p. 27]. Therefore, the *McDonnell Douglas* burden-shifting analysis applies.

With regard to the first and third factors, LC contends that Dr. Spears is not a qualified individual with a disability and that its actions were justified by Dr. Spears' own conduct in seeking long-term leave in August 2016 for reasons unrelated to any prior chemotherapy or cancer-related treatment, inasmuch as Dr. Spears concedes the following:

> She was not disabled from working as of August 2016. Dr. Spears concedes that she approached Shannon Tassin, Human Resource Director for LC, in August 2016, seeking leave from her teaching duties, even though she was not sick or disabled; "I took sick leave because it was so upsetting to me of what had happened."(Referring to the College's decision to reorganize the Department of Health and Physical Education.) [Doc. No. 24-13, at pp.6-7, 8-9, 16]

> She never indicated to anyone at Louisiana College that she needed to take sick leave because of a purported disability or sickness–according to Dr. Spears, she simply requested the leave because she "needed a break." [*Id*., at pp. 9-11, 20]

> Dr. Spears concedes that when she requested the sick leave and disability leave, she knew that she was not disabled or sick. [*Id*., at pp. 16-17]

> Dr. Spears concedes that she was never diagnosed with stress or anxiety, such that she could not work. [*Id*., at p. 17]

> Dr. Spears concedes that she spoke with Shannon Tassin and Dr. Jerry Pounds in August 2016 and with regards to her seeking leave from teaching even though she was not disabled or sick. [*Id*., at pp. 20-21]

> Dr. Spears has no direct evidence to support her allegations of discrimination on the basis of disability. [*Id.*, at pp. 27, 28]
>
> Dr. Spears concedes that at no time during the 2016-17 school year did she request a medical-related accommodation that was not provided to her by Louisiana College. [*Id.*, at pp. 29, 30]

Moreover, LC asserts that the fact that Dr. Spears was extended a year-long contract for the 2016-17 academic year demonstrates that she was not regarded as disabled from teaching by LC.

The Court finds that Dr. Spears has not established the first factor.  Although she was treated for cancer, she does not assert that she was disabled then, and she testified that she did not have a disability at the time she was terminated.

Additionally, the Court finds that Dr. Spears has not established the third factor, that she was subjected to an adverse employment decision on account of her disability (or record of disability).  The record is devoid of any evidence to show that Dr. Spears' record of disability played any role in her termination.  As indicated above, Dr. Spears concedes that she was not disabled at the time that she requested leave, she concedes that she was able to work at the time that she requested leave, and she concedes that at no time did she inform the College that she was disabled or unable to work.  More significantly, Dr. Spears was absent and on leave for much of the Spring 2016 semester, yet she was extended a contract for the 2016-17 school year. Had her record of disability served any role with regards to the decision not renew her contract for the 2017-18 school year, LC would have taken those steps earlier, but did not.

For these reasons, the Court finds that Dr. Spears has failed to establish a *prima facie* case of discrimination on the basis of disability.

### e.      Retaliation

Both LC and Dr. Spears seek summary judgment on the issue of retaliation.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she participated in a Title VII protected activity; (2) she suffered an adverse employment action by her employer; and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Aryain v. Walmart Stores Tex., LP*, 534 F.3d 473, 484 (5th Cir. 2008)).

Dr. Spears participated in a Title VII protected activity in that she and Dr. Aguillard drafted an EEOC complaint and a whistleblower complaint, which was in the computer that was seized by LC on September 28, 2015.  Additionally, she filed an EEOC complaint with the EEOC on January 25, 2017.  There is no dispute that she suffered an adverse employment action, in that she was terminated.  Therefore, the first two prongs are satisfied.

LC argues that Dr. Spears cannot establish the third prong because there is no causal connection between the protected activity and the adverse action.  LC contends that Dr. Spears concedes that at no time relevant to these proceedings did she file any whistle blower complaint with LC, and that, while she may have filed a Charge of Discrimination with the EEOC in or about January 2017, the record establishes that LC did not receive a copy of the notice until March 2017, and, thus, there is no causal connection between the protected activity in filing same with the EEOC and the February 20, 2017 nonrenewal letter, as it was issued in advance of the College's notice of the filing.

Dr Spears responds that LC knew about the drafts of the EEOC charge and whistleblower complaint in the seized computer before she was terminated because they were used against Dr. Aguillard in the FAAC hearing on February 23, 2016.

She contends further that LC was served with the EEOC complaint on March 6, 2017, and thus LC was fully informed about her charges with the EEOC before it terminated her, because

the letter dated February 20, 2017 was not received by her until April 22, 2017, and could have

been back-dated to before LC received her EEOC complaint.

> The third element, a causal connection, may be met by
>
> showing "[c]lose timing between an employee's protected activity and an adverse action against him" *McCoy [v. City of Shreveport]*, 492 F.3d at 562 [5thCir. 2007]].  Such temporal proximity must generally be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268,273-74 ... (2001). This Court has found, for example that "a time lapse of up to four months" may be sufficiently close ... while a five-month lapse is not close enough without other evidence of retaliation ... Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures. ...

*Feist v. Louisiana, Dep't. f Justice, Office of the Atty. Gen.,* 730 F.3d 450, 454-55 (5th Cir. 2013).

The Court finds that Dr. Spears has carried her burden of establishing the elements of a

*prima facie* case of retaliation.  Although the termination letter is dated February 20, 2017, LC has

presented no proof as to when it was actually written or as to when it was actually sent to Dr.

Spears. Therefore, her allegation that she did not receive it until *after* LC was notified of her EEOC

complaint, is unrebutted.  This creates an issue of fact as to whether it was actually written after

March 6, 2017, but backdated to a date before then. In any event, it is clear that LC knew about

the drafts in the seized computer in February 2016, well before she was terminated.

The Court will next consider, in view of the finding that Dr. Spears has established a *prima*

*facie* case of retaliation, whether LC has produced evidence that the adverse action was taken for

a legitimate, nonretaliatory reason, and, if so, whether Dr. Spears has produced evidence to rebut

the reasons given as pretext for retaliation.

### 2.    Legitimate, Nonretaliatory Reasons, and Pretext

If a plaintiff successfully shows a prima *facie case* of retaliation, the burden will then

shift to the defendant to demonstrate a legitimate, non-retaliatory reason for the employment

actions of which the plaintiff complains. *See Hiner v. McHugh*, 546 Fed. App'x. 401, 409 (5th

Cir. 2013) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996)). The burden then shifts back to the plaintiff who has the burden of demonstrating pretext by showing that the employer's proffered reason or explanation is false or unworthy of credence. *Id.; see also Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

LC asserts that Dr. Spears' contract was not renewed for the 2017-18 school year because she informed the College that she would not be returning at the time she requested long term leave in 2016, and the College elected to approve her leave application, and to pay her in full for the 2016-17 school year, but to not renew the contract for the following year. It also distributed her assigned courses among existing faculty, virtually all of whom were female.

LC further asserts Dr. Spears' adjunct position was not filled after the 2016-17 school year, and after the reorganization of the Department of Health and Physical Education within the School of Nursing, the College hired Dr. Sonia Tinsley to serve as its Chair of the Allied Health Department.

LC has clearly stated legitimate, non-retaliatory reasons for terminating Dr. Spears. Therefore, the burden shifts back to Dr. Spears to demonstrate that LC's articulated reasons are actually pretexts for retaliation.  In order to avoid summary judgment, Dr. Spears must show a conflict in substantial evidence on the question of whether LC would not have taken the action "but for" the protected activity.

Dr. Spears argues that the transfer of the Health and Physical Education Department to the College of Nursing and Allied Health was contrived in an attempt to disguise LC's discrimination against her because of her disabilities, her age and her gender, and, in retaliation against Dr. Spears for having written a complaint against Dr .Cheryl Clark that LC (and Dr. Clark) had obtained by converting and hacking Dr. Aguillard's computers. She argues that LC cannot identify a single

higher education institution in Louisiana or Mississippi where the Department of Health and Physical Education is under the School of Nursing and Allied Health. [Dr. Sharp Deposition, Doc. No. 34-59, pp. 2-11]. She questions why this decision was made without seeking any input or communication from herself particularly in view of her experience and education.

Dr. Spears further asserts that the LC Faculty Handbook requires changes to be made in an academic program must be approved by a majority vote of the Board of Trustees as a whole before any faculty member can be dismissed, and that none of the Faculty Handbook's requirements for a "change in direction" by transferring the Health & Physical Education program were followed. [Doc. No. 34-11].

Dr. Spears further contends that Dr. Brewer falsely represented to the Board of Trustees that she had "retired" and "was not coming back." She states that, in truth and reality, she had taken a "break" and was on "sick leave" at the time. [Spears Affidavit, Doc. No. 34-7, ¶9]. She asserts the "sick leave" policy does not require a faculty member to retire, and that LC knew she intended to return to her employment starting in August 2017.

Dr. Spears additionally relies on the testimony of Dr. Brewer and Dr. Clark as to how the decision to terminate Dr. Spears was made is directly contradictory and cannot be reconciled. Dr. Clark testified that she had nothing to do with Dr. Spears' dismissal and that she never even discussed the issue with Dr. Brewer. [Clark Deposition, Doc. No. 34-55, p. 6]. Dr. Brewer, on the other hand, testified that he terminated Dr. Spears on the recommendation of Dr. Clark. [Brewer Deposition, Doc. No. 34-60, p. 3].

She states, at his deposition, Dr. Brewer had a different explanation: He claimed that he dismissed Dr. Spears because of her "illness and poor health." [*Id*., Dep., pp. 4-9]. She argues that Dr. Brewer had no medical evidence to support this contention at the time he made the

decision to terminate Dr. Spears (letter dated February 20, 2017). She further states that her e-mail to Shannon Tassin dated March 16, 2017, shows that she (Dr. Spears) was seeking to return to her position:

> ... I will be paid my full contract for this year getting checks thru July 31st and then start next years contract when I start back August 1. Then when I sign my next years contract, my insurance will switch back to what it was before I went on sick leave and disability. ...”

[Doc. No. 34-28].

LC replies that Dr. Spears' opposition memorandum is devoid of any credible evidence which would show pretext. LC argues further that Dr. Spears' opposition rests solely on her admittedly subjective contentions, which cannot serve as the basis of relief. *See Carr v. Sanderson Farms, Inc.,* 665 Fed. App'x. 335, 338 (5th Cir. 2016). Without evidence in support of her contentions, Dr. Spears' opposition does nothing more than attempt to cast doubt on LC's legitimate and nonretaliatory reasons for the nonrenewal of her contract and/or the reorganization of the Health and Physical Education Department.  LC asserts that Dr. Spears' speculation is insufficient to demonstrate retaliatory intent, much less pretext. *Farmer v. Mouton*, 2018 W.L. 1123573 (E.D. La. 2018) (citing *Smith v. Women's Hospital*, 671 Fed. App'x. 884, 888 (5th Cir. 2016)).

The Court finds that Dr. Spears has failed in her burden to prove pretext.  The evidence shows that LC took unusual steps to assist Dr. Spears when she was experiencing difficult medical issues.  When she was unable to teach during the 2015-16 school term, the faculty members closed ranks and covered for her.  LC then offered her a contract for the 2016-17 school year, which she accepted, only to turn around and take sick leave for the entire contract

period, even though she admits she was able to work.  She was paid for that year despite teaching no classes.

Although LC knew about the whistleblower and EEOC drafts in Dr. Aguillard's computer in February of 2016, LC nevertheless extended Dr. Spears another "Senior Professor" contract for the 2016 –2017 school year, *on May 17, 2016*.  This action belies Dr. Spears' arguments of pretext.

The Court does not construe the reasons that Dr. Brewer gave for Dr. Spears' termination to be contradictory to the same extent that Dr. Spears urges. Nor does the Court construe the language in the letter dated February 20, 2017, that LC wanted to "go in a different direction" to be inconsistent with the legitimate nonretaliatory reasons LC has articulated for not renewing her contract.   It was only after LC had given Dr. Spears a new contract for the 2016-2017 school year, and after she failed to return to teach that year even though she was physically able to do so, that LC decided to "go in a different direction," and not renew her contract for the 2017-2018 year.

Therefore, because LC has offered legitimate, nonretaliatory reasons for her termination, and because Dr. Spears has offered little more than her own speculations as evidence of pretext, summary judgment must be granted dismissing her claims.    Accordingly, LC's motion for summary judgment on Dr. Spears claims of age, religion, gender, and disability discrimination, and her claim based upon retaliation under Title VII, is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE.**  Dr. Spears' Cross-Motion for Partial Summary Judgment on her claim for age discrimination and her claim based upon retaliation under Title VII is **DENIED**.

F.      **Defamation Claim**

Dr. Spears' Complaint asserts a claim against LC for defamation based on a Facebook

posting by Dr. Brewer on or about May 2017 on a social media site in response to an online

comment made by Dr. Spears' sister, Charlotte Dossman McIntosh, who was critical of LC's

decision to not renew her sister's contract.  The Facebook posting stated:

> Official Response from Dr. Rick Brewer
> Mrs. Charlotte Dossmann McIntosh
> Dear Mrs. McIntosh
>
> I write to briefly respond to the email you sent out to many of our
> Baptist and LC friends about your sister, Dr. Carolyn Spears. I write
> only to make sure that the record is clear that we are thankful for the
> years of God-honoring service from Dr. Spears at Louisiana College
> and we wish her well in the future.  She has been and remains a
> beloved part of the LC family.
>
> As you know, Dr. Spears retired from the full time faculty at LC in
> 2007, and since that time has served as a contract adjunct senior
> professor, which under LC policy is a year-to-year engagement on
> an as-needed basis.
>
> We were all saddened by Dr. Spears' illness in 2015 and prayed for
> her recovery.  Our sympathy and commitment to her extended to the
> point of continuing to pay her full salary for two years without her
> ever teaching a single student, although the College was not
> obligated to do so.  As you can understand, LC cannot sustain such
> a practice, which has never been afforded any other faculty member.
>
> I regret that your widely distributed email so grossly
> mischaracterized my letter to Dr. Spears.  I have included the content
> of the letter in its entirety at the conclusion of this letter.  Any fair
> reading of the letter will not find it "cold, rude and insulting," as you
> accuse, but a thoughtful thank you for service to the Lord and the
> College well-given and appreciated.  I do not understand the need to
> skew the spirit of its content.
>
> The decision not to renew Dr. Spears' annual contract for another
> year was not based on personality, but on practicality, fiscal
> responsibility, and a hard choice about what was best for the College
> she loved and served.

Current circumstance would permit no other choice.

[Doc. No. 24-20].

The letter from Dr. Brewer to Dr. Spears [Doc. No. 24-16] referenced in the posting has been set forth above. LC asserts that there is nothing contained within the posting that is close to being defamatory in nature, and, therefore, this cause of action should be dismissed.

Dr. Spears, on the other hand, asserts that the letter from Dr. Brewer falsely states, among other things, that she received her full salary for two years without her ever teaching a single student, which conveys an element of personal disgrace or disrespect, and accuses her of being a "gold-digger" or "free-loader," and holds her up to contempt and ridicule.

The elements of defamation are: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 674 (citing *Costello v. Hardy*, 03-1146 (La. 1/21/04),864 So.2d 129, 139; *Trentacosta v. Beck¸* 96-2388 (La. 10/21/97), 703 So.2d 552, 559.). If facts sufficient to establish even one element of the defamation tort are absent, a plaintiff's cause of action fails. *See Costello,* 864 So.2d at 139; *Moore v. Cabaniss*, 29,834 (La.App. 2d Cir. 9/24/97), 699 So.2d 1143, 1146, writ denied, 97-2667 (La. 1/0/ 98), 705 So.2d 1108 ("failure of any one of these elements of proof is fatal").

Whether a statement is defamatory is a legal question for the court. *Cooksey v. Stewart*, 41,336 (La. App. 2d Cir. 8/23/06), 938 So.2d 1206, 1211, writ denied, 06-2348 (La. 12/8/06), 943 So.2d 1087 (citing *Sassone v. Elder*, 626 So.2d 345, 352 (La. 1993); *Johnson*, 889 So.2d at 332). "Defamation claims are inordinately susceptible to summary adjudication due to the

constitutional considerations involved in defamation actions." *Bell v. Rogers*, 29,757 (La. App. 2d Cir. 8/20/97), 698 So.2d 749, 753.

"Speech on matters of public concern enjoys enhanced constitutional protection." *Romero v. Thomson Newspapers (Wisconsin), Inc.,* 94-1105 (La. 1/17/95), 648 So.2d 866, 869. If speech is about a matter of public concern then, as a matter of constitutional law, the burden of proof is on the plaintiff to demonstrate falsity and malice. As stated in *Spears v. McCormick & Co., Inc*:

> The United States Supreme Court [has] held that the First Amendment of the U.S. Constitution requires that a plaintiff who is a private figure and who seeks damages for public concern speech claimed to be defamatory has the burden of proving falsity (and fault) in order to recover damages.

*Spears v. McCormick & Co., Inc.*, 520 So.2d 805, 808 (La. App. 3d Cir. 1987), writ denied, 522 So.2d 563 (La. 1988).

Speech is a "matter of public concern" if it relates "to any matter of political, social, or other concern to the community." *Kennedy*, 935 So.2d at 677 n. 6, (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The privilege to comment on matters of public concern "extends to information concerning interesting phases of human activity and embraces all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period." *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980).

LC asserts that it published the nonrenewal letter and Dr. Brewer's response to Dr. Spears' sister on the "Louisiana College" Facebook site to address her criticisms of LC's nonrenewal letter, which she claimed to be "rude and insulting."

LC further asserts that the tenor of the post and nonrenewal letter do not express any malice but graciously conveyed LC's sentiments towards Dr. Spears' retirement in the face of undue criticism; it clearly was not designed to "harm the reputation of another, or otherwise

expose a person to contempt or ridicule." *Costello v. Hardy*, 864 So.2d129 (La. 2004).  Citing *Davis v. Borsky*, 660 So.2d17, 22 (La. 1995), LC argues that a third person reading the instant communications would not have reasonably understood the statements, taking in context, as being intended in a defamatory sense.

The Court does not find the post to be false and defamatory.  Although Dr. Spears argues that it accuses her of being a gold digger or free loader, a plain reading of the documents reveals that it makes no such statement, expressly or impliedly.  Contrary to Dr. Spears' representations, the nonrenewal letter of February 20, 2017, and the corresponding response of LC to criticisms levied against the College by Dr. Spears' sister, are gracious in tone and did not serve to subject Dr. Spears to "contempt and ridicule." Dr. Spears' only support for the assertion that the post was made in bad faith is her personal belief and feelings, and uncorroborated assertions are inadequate to support a defamation claim. *Esiverne v. Times Picayune, LLC*, 950 So.2d858 (La. App. 4th Cir. 2006). Additionally, there is no evidence to suggest that LC made the post with malice, actual or implied, or that it violated any confidentiality owed.  Accordingly, LC is entitled to judgment dismissing this claim with prejudice.

### G.      Breach of Contract

Dr. Spears contends that she asserted a claim for breach of contract in her Complaint, and that she is entitled to judgment on that claim as a matter of law.  LC disputes that the Complaint asserts such a claim, and further disputes Dr. Spears' entitlement to summary judgment on her purported claim.

The basis asserted by Dr. Spears for her claim is that she had tenure when she was terminated, and, therefore, she could only be terminated for cause. Although she concedes that her  written employment contract for the term August 17, 2015, to May 7, 2016, does not

mention the term "tenure" itself, she asserts that her contract expressly provided that all policies in the Faculty Handbook were made a part of the terms and conditions of her contract, including the provisions in the Faculty Handbook relating to "tenure" and the provisions relating to the confidentiality of her "personnel file." She further contends that it is undisputed that she became a "tenured" professor at Louisiana College in 1984, and, therefore, it is LC's burden to show she somehow lost or was "stripped" of her tenure at any time.

She argues that tenured professors can only be terminated for "cause," and that LC's decision "to go in a different direction," does not constitute "cause" within the meaning of Sections 2.5.1 or 2.11.4 of the Faculty Handbook [Doc. No. 34-10]. Nor are the other vacillating and contradictory "explanations" offered by Dr. Brewer "cause" for termination.  Thus, she concludes that LC clearly breached her employment contract; there are no genuine issues of material fact with respect to these issues; and, therefore, she is entitled to judgment on the breach of contract issue as a matter of law.

LC responds, first, that Dr. Spears failed to procedurally assert a state law claim of breach of contract in her Complaint.  LC argues that Paragraph III of the Complaint makes expressly clear that Dr. Spears' claims arise under (1) Title VII, (2) the ADEA, and/or (3) Title II of the ADA. LC asserts that there is no identification of a claim of a state law breach of contract anywhere in the Complaint. As such, her claims therein expressly and solely relate to what she alleged to be discrimination on the basis of her age, gender, disability and/or retaliation, and the purported breach of contract claim is an improper new claim. A claim raised only in response to a motion for summary judgment is not properly before the Court. *Cutrera v. Board of Supervisors of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005); *see also Riggens v. City of Indianola, Mississippi*, 2015 WL 5568932 (N.D. Miss. 2015) ("A Complaint cannot be

modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss or for summary judgment.") (*citing Streit v Bushnell*, 424F. Supp.2d 633, 639 (S.D. N.Y.2006)).

The Court has carefully examined Dr. Spears' Complaint, and it, too, is unable to discern a cause of action for breach of contract.  To state a breach of contract claim, Louisiana law requires a plaintiff to show that "(1) the parties consented to be bound through offer and acceptance; (2) the obligor failed to perform a conventional obligation; and (3) the failure to perform resulted in damages to the obligee." *Crescent City Surgical Centre v. Cigna Health and Life Ins. Co*, No. 18-11385, 2020 WL 1503534 (E.D. La. March 30, 2020) (citing LA. CIV. CODE arts 1927 & 1944 and *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/2011), 68 So.3d 1099, 1108-09). The plaintiff must also "allege a breach of a specific provision of the contract." *Id.*; *Loque v. Allstate Ins. Co.,* 314 F.3d 776, 782(5th Cir. 2003). Here, Dr. Spears failed to allege the elements of a breach of contract claim with sufficient particularity. Moreover, she failed to identify in her Complaint any specific contract provision LC allegedly breached. Therefore, for that reason alone, D. Spears' motion for summary judgment must be denied.

LC additionally asserts that the facts are clear that (1) Dr. Spears was not a tenured employee of LC entitled to contract renewal, (2) the 2016-17 Senior Professor Contract extended to Dr. Spears was not terminated, but completed, and (3) no breach occurred with regards to other provisions of the contract, which was paid in full.

LC contends that Dr. Spears elected to retire from her position as a tenured Professor with Louisiana College on or about February 28, 2007, in order to take advantage of the then-existing retirement plan options [Spears Deposition, Doc. No. 24-13, p. 11-13; Doc. No. 39-4]. She acknowledged in executing her June 7, 2007 Employment Separation form that she retired from her full-time position but would continue "as Senior Professor teaching as adjunct." [Doc.

No. 39-4, p. 2].  The Adjunct Professor Contracts which Dr. Spears generally executed from the

Fall 2007 semester to the Fall 2016 semester expressly provided that she would serve as a Senior

Professor at Louisiana College, an adjunct position which does not bestow benefits of tenure.

[Doc. Nos. 24-9, 24-10; Doc. No. 39-6].  The Adjunct Contract executed by Dr. Spears,

generally, from the Fall 2007 semester to the Fall 2016 semester clearly stated that the contract

(1) was subject to nonrenewal, (2) limited to the period of time specified on the contact, and (3)

offered no expectation of any future contracts. [*Id*.]

In comparison, LC points to the Tenured Faculty Contract executed by Dr.  Spears for the

Fall 2006/Spring 2007 semester [Doc. No. 39-5].  Absent from the Tenured Faculty Contract is

any language stating that the Tenured Faculty Contract is (1) subject to nonrenewal, (2) limited

to the period of time specified on the contract, and/or (3) offers no expectation of any future

contracts.  However, this language is clearly contained in the adjunct contracts. LC argues that, if

tenure was extended, these contracts would have reflected same, or deleted such language.

Additionally, Dr. Spears herself conceded/testified on more than one occasion that she

was not a tenured employee of LC after June 2007. [Spears Deposition, Doc. No. 24-13, pp. 12-

13]; and excerpts from the deposition of Carolyn Spears taken in the matter of *Ross v. Louisiana

College*, No. 16-cv-0870, (W.D. La.), taken on December 19, 2016 [Doc. No. 39-7, pp. 4-6].

Furthermore, LC has attached the Declaration of Randall Hargis, Chief Financial Officer

of Louisiana College since 2001, and an Officer of the College's Board of Trustees, which attests

that defendant has researched its records and cannot find any action on the part of the Louisiana

College Board that bestowed tenure upon Dr. Spears and subsequent to her retirement on or

about June 10, 2007, or with regards to her service as a Senior Professor. [Doc. No. 39-8].

The Court finds that Dr. Spears has failed to establish that she was a tenured employee of LC, and, therefore, DENIES Dr. Spears Motion for Summary Judgment on her purported claim for breach of contract.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Defendant Louisiana College's Motion for Summary Judgment [Doc. No. 24] should be GRANTED, and that Plaintiff Dr. Carolyn D. Spears' Cross-Motion for Partial Summary Judgment [Doc. No. 34] should be DENIED.  All claims of Dr. Spears are DISMISSED WITH PREJUDICE.

**Monroe, Louisiana,** this 24th day of July, 2020.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

30